**CASE NO. 2:21-cv-7572-JAK**

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

---

In re: Zetta Jet USA, Inc., et al.

*Debtors.*

JONATHAN D. KING, solely in his capacity as Chapter 7
Trustee of Zetta Jet USA, Inc. and Zetta Jet PTE, Ltd.,

*Plaintiff-Appellant,*

vs.

UNIVERSAL LEADER INVESTMENT LIMITED, *et al.*,

*Defendants-Appellees.*

---

Appeal from the United States Bankruptcy Court, Central District of California
Bankruptcy Case No. 2:17-bk-21386-SK
Adversary Case No. 2:19-ap-01383-SK

---

**APPELLEES' ANSWERING BRIEF**

---

MICHAEL L. BERNSTEIN (*pro hac vice*)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
T (202) 942-5000
F (202) 942-5999
michael.bernstein@arnoldporter.com

R. REEVES ANDERSON (*pro hac vice*)
Arnold & Porter Kaye Scholer LLP
1144 Fifteenth Street, Suite 3100
Denver, CO 80202-2848
T (303) 863-1000
F (303) 863-2301
reeves.anderson@arnoldporter.com

BRIAN K. CONDON (Bar No. 138776)
OSCAR RAMALLO (Bar No. 241487)
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
T (213) 243-4000
F (213) 243-4199
brian.condon@arnoldporter.com
oscar.ramallo@arnoldporter.com

*Counsel for Defendants-Appellees*
*Universal Leader Investment Limited, Glove Assets Investment Limited,*
*Truly Great Global Limited, and Li Qi*

171144229

1

## **DISCLOSURE STATEMENT (Fed. R. Bankr. P. 8012)**

2

3       No parent corporation or publicly held corporation owns 10% or more of the

4 stock of Universal Leader Investment Limited, Glove Assets Investment Limited or

5 Truly Great Global Limited.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- i -

1
2

# **TABLE OF CONTENTS**

Page

DISCLOSURE STATEMENT (Fed. R. Bankr. P. 8012) ...............................i

PRELIMINARY STATEMENT ...............................................................1

STANDARD OF REVIEW ....................................................................2

STATEMENT OF THE CASE .................................................................2

 A. Factual Background .................................................................2

 B. Proceedings in the Bankruptcy Court .......................................5

  1. The Complaint .........................................................5

  2. The First Dismissal Order.............................................6

  3. The Amended Complaint.............................................7

  4. The Final Dismissal Order...........................................7

SUMMARY OF ARGUMENT .................................................................8

ARGUMENT ........................................................................................10

I. THE TRUSTEE'S CLAIMS REQUIRE AN IMPERMISSIBLE EXTRATERRITORIAL APPLICATION OF THE STATUTE. .....................10

 A. Section 548 Does Not Regulate Foreign Transfers.................11

 B. The relevant conduct occurred abroad. ....................................15

  1. The transfers were extraterritorial. ...............................16

  2. The obligations were extraterritorial. ..........................22

 C. The Bankruptcy Code does not authorize recovery of extraterritorial transfers based on domestic obligations. .........................25

II. FILING A PROOF OF CLAIM DOES NOT ALTER THE TERRITORIAL SCOPE OF § 548. ....................................................27

III. COUNT 6 FAILS TO STATE A RECHARACTERIZATION CLAIM..........34

IV. THE BANKRUPTCY COURT CORRECTLY DISMISSED COUNTS 8 AND 9. ...........................................................................35

CONCLUSION....................................................................................36

CERTIFICATE OF COMPLIANCE............................................................37

171144229

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                    <u>Page(s)</u>

*In re Ampal-Am. Israel Corp.*,
   562 B.R. 601 (Bankr. S.D.N.Y. 2017) ................................................................. 14

*In re Arcapita Bank B.S.C.(c)*,
   575 B.R. 229 (Bankr. S.D.N.Y. 2017) ................................................................. 17

*In re Asia Glob. Crossing, Ltd.*,
   333 B.R. 199 (Bankr. S.D.N.Y. 2005) ........................................................... 25, 26

*In re Ass'n of Volleyball Pros.*,
   256 B.R. 313 (Bankr. C.D. Cal. 2000) ............................................................... 30

*Banco Safra S.A. - Cayman Islands Branch v. Samarco Mineracão*,
   2019 WL 2514056 (S.D.N.Y. 2019) ................................................................. 17

*In re Bankr. Estate of Midland Euro Exch. Inc.*,
   347 B.R. 708 (Bankr. C.D. Cal. 2006) .............................................. 12, 13, 14, 15

*Begier v. IRS*,
   496 U.S. 53 (1990) ............................................................................................. 14

*In re CIL Ltd.*,
   582 B.R. 46 (Bankr. S.D.N.Y. 2018) ...................................................... 12, 14, 28

*Cohen v. ConAgra Brands, Inc.*,
   16 F.4th 1283 (9th Cir. 2021) .............................................................................. 2

*Diaz-Barba v. Kismet Acquisition, LLC*,
   No. 08:CV-1446 BTM (BLM), 2010 WL 2079738 (S.D. Cal. May 20, 2010) .... 33

*EEOC v. Arabian American Oil Co.*,
   499 U.S. 244 (1991) ........................................................................................... 11

*Ex parte Christy*,
   44 U.S. 292 (1845) ............................................................................................. 31

*FDIC v. Hirsch (In re Colonial Realty Co.)*,
   980 F.2d 125 (2d Cir. 1992) ............................................................................... 13

*In re Fitness Holdings Int'l, Inc.*,
   714 F.3d 1141 (9th Cir. 2013) .................................................................. 10, 34, 35

- iii -

*Foley Bros. v. Filardo*,
    336 U.S. 281 (1949)............................................................................. 11

*In re Foxmeyer Corp.*,
    290 B.R. 229 (Bankr. D. Del. 2003)..................................................... 25

*In re French*,
    440 F.3d 145 (4th Cir. 2006) ............................................................... 15

*Hogue v. Yordy*,
    796 Fed.Appx. 955 (9th Cir. 2020) ..................................................... 27

*In re Incomnet, Inc.*,
    463 F.3d 1064 (9th Cir. 2006) ....................................................... 19, 20

*In re Interbulk, Ltd.*,
    240 B.R. 195 (Bankr. S.D.N.Y. 1999) ................................................ 30

*In re International Manufacturing Group, Inc.*,
    2016 WL 7163588 (Bankr. E.D. Cal. Dec. 6, 2016) ...................... 26, 27

*Katchen v. Landy*,
    382 U.S. 323 (1966).................................................................. 28, 29, 30

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
    731 F.2d 909, 997 (D.C. Cir. 1984).................................................... 33

*Langenkamp v. Culp*,
    498 U.S. 42 (1990).............................................................................. 29

*Law v. Siegel*,
    571 U.S. 415 (2014)...................................................................... 31, 33

*In re MacMenamin's Grill Ltd.*,
    450 B.R. 414 (Bankr. S.D.N.Y. 2011) ................................................ 27

*In re Maxwell Communication Corp.*,
    186 B.R. 807 (S.D.N.Y. 1995) ................................................ 15, 17, 21

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) ............................................................... 33

*Marshall v. Marshall*,
    547 U.S. 293 (2006)............................................................................ 31

- iv -

*Morrison v. National Australia Bank Ltd.*,
   561 U.S. 247 (2010)..................................................................................*passim*

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,
   458 U.S. 50 (1982)............................................................................... 31

*Nestle USA, Inc. v. Doe*,
   141 S. Ct. 1931 (2021)........................................................................ 19

*Nguyen v. Bank of Am., NA*,
   563 Fed. Appx. 558 (9th Cir. 2014) ................................................. 19

*Norwest Bank Worthington v. Ahlers*,
   485 U.S. 197 (1988)................................................................. 2, 29, 31

*Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
   549 B.R. 56 (S.D.N.Y. 2016) ..................................................... 20, 21

*Parker v. Joe Lujan Enterprises, Inc.*,
   848 F.2d 118 (9th Cir. 1988) .............................................................. 36

*Pepper v. Litton*,
   308 U.S. 295 (1939)........................................................................... 31

*In re Picard*,
   917 F.3d 85 (2d Cir. 2019) ...........................................................*passim*

*Pirani v. Slack Techs., Inc.*,
   13 F.4th 940 (9th Cir. 2021) ............................................................... 2

*Rajala v. Gardner*,
   709 F.3d 1031 (10th Cir. 2013) ......................................................... 13

*RJR Nabisco, Inc. v. European Cmty.*,
   136 S. Ct. 2090 (2016).................................................................*passim*

*Rubin v. Manufacturers Hanover Tr. Co.*,
   661 F.2d 979 (2d Cir. 1981) .................................................... 22, 23, 25

*In re Saxman*,
   325 F.3d 1168 (9th Cir. 2003) ........................................................... 29

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   513 B.R. 222 (S.D.N.Y. 2014) .......................................................... 14

- v -

*In re Sherwood Invsts. Overseas Ltd.*,
 No. 10-BK-584, 2015 WL 4486470 (Bankr. M.D. Fla. July 22, 2015) ............... 14

*In re Sherwood Invsts. Overseas Ltd.*,
 No. 15-cv-1469, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016) .......................... 14

*In re Simon*,
 153 F.3d 991 (9th Cir. 1998) ................................................. 31, 32, 33, 34

*Stern v. Marshall*,
 564 U.S. 462 (2011) ............................................................... 29, 32

*Subafilms, Ltd. v. MGM-Pathe Communications Co.*,
 24 F.3d 1088 (9th Cir. 1994) .......................................................... 14, 31

*United States v. Ho*,
 984 F.3d 191 (2d Cir. 2020) ................................................................ 18

*United States v. Miranda*,
 780 F.3d 1185 (D.C. Cir. 2015) ........................................................... 34

*United States v. Prevezon Holdings, Ltd.*,
 251 F. Supp. 3d 684 (S.D.N.Y. 2017) .................................................... 18

*United States v. Wolfenbarger*,
 No. 16-CR-00519-LHK-1, 2020 WL 2614958 (N.D. Cal. May 22, 2020) .......... 34

*U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.*,
 No. 3:10-CV-1842-G, 2012 WL 3100778 (N.D. Tex. July 31, 2012) ................ 25

*U.S. Fid. & Guar. Co. v. Bray*,
 225 U.S. 205 (1912) ...................................................................... 31

*Walls v. Wells Fargo Bank, N.A.*,
 276 F.3d 502 (9th Cir. 2002) ............................................................. 26

*WesternGeco LLC v. ION Geophysical Corp.*,
 138 S. Ct. 2129 (2018) ...................................................................... 16

*Willms v. Sanderson*,
 723 F.3d 1094 (9th Cir. 2013) ......................................................... 9, 31

*Yates v. United States*,
 574 U.S. 528 (2015) ...................................................................... 23

**Statutes**                                                                    **Page(s)**

11 U.S.C. § 105(a) ............................................................................. *passim*

11 U.S.C. § 305 ....................................................................................... 31

11 U.S.C. § 362 ............................................................................... 6, 7, 31

11 U.S.C. § 501 ....................................................................................... 32

11 U.S.C. § 502 ..................................................................... 6, 7, 34, 35

11 U.S.C. § 524 ....................................................................................... 32

11 U.S.C. § 541 ....................................................................................... 12

11 U.S.C. § 541(a) ........................................................................... 12, 13

11 U.S.C. § 541(a)(1) ...................................................................... 12, 13

11 U.S.C. § 541(a)(3) ...................................................................... 13, 15

11 U.S.C. § 547 ............................................................................ 1, 6, 28

11 U.S.C. § 548 ................................................................................. *passim*

11 U.S.C. § 548(a)(1) ...................................................................... 21, 22

11 U.S.C. § 550 ................................................................................. *passim*

11 U.S.C. § 550(a) ................................................................ 9, 17, 25, 26

11 U.S.C. § 550(a)(1) ............................................................................ 25

11 U.S.C. § 727(c) .................................................................................. 31

18 U.S.C. § 1956(a)(2)(A) ................................................................... 18

18 U.S.C. § 2314 ................................................................................... 18


**Rules**                                                                        **Page(s)**

Fed. R. Bankr. P. 8015(a)(5) ............................................................... 36

Fed. R. Bankr. P. 8015(a)(6) ............................................................... 36

APPELLEES' ANSWERING BRIEF

Fed. R. Bankr. P. 8015(a)(7)(B)(i) ................................................................... 36

Fed. R. Bankr. P. 8015(g) ............................................................................... 36

Fed. R. Civ. P. 15 ............................................................................................. 8

**Other Authorities**                                                          **Page(s)**

C. Bertaut, *et al.*, "The International Role of the U.S. Dollar," FEDS Notes (Oct. 6, 2021) (*available at* https://www.federalreserve.gov/econres/notes/feds-notes/the-international-role-of-the-u-s-dollar-20211006.htm) ............................................. 18

1

## **PRELIMINARY STATEMENT**

2       This appeal is from a judgment in favor of defendants-appellees Universal

3  Leader Investment Limited ("UL"), Glove Assets Investment Limited ("Glove"),

4  Truly Great Global Limited ("TGG") (collectively "UL Defendants") and their

5  Director Li Qi ("Li Qi"), in an adversary proceeding brought by Jonathan D. King, the

6  Chapter 7 Trustee of Debtors Zetta Jet PTE, Ltd., a Singapore company, and Zetta Jet

7  USA, Inc., its U.S. subsidiary. The UL Defendants are British Virgin Island ("BVI")

8  companies with Chinese ownership who suffered substantial losses in providing Zetta

9  PTE with over $150 million in cash investments, loans, and revenue-generating

10  aircraft required to operate its business. The Trustee's adversary proceeding is a

11  meritless attempt to seek millions of additional dollars from the UL Defendants—

12  Zetta PTE's largest victims and only outside investors—by fabricating losses out of

13  whole cloth from foreign transactions that resulted in a substantial net infusion of

14  funds and assets *into* Zetta PTE.

15       The Bankruptcy Court had numerous grounds available to dismiss the Trustee's

16  meritless claims against Zetta PTE's largest benefactors. In two exhaustively

17  researched and analyzed decisions, the Bankruptcy Court properly concluded that the

18  Bankruptcy Code provisions on which the Trustee relies do not apply extraterritorially

19  to the foreign transactions at issue—aircraft leases and cash loans to a Singapore

20  company, Zetta PTE, by foreign parties resident in the BVI with Chinese ownership,

21  utilizing funds from an account in Singapore deposited to an account in Hong Kong,

22  and conducted under contracts governed by the laws of Singapore, England, and Hong

23  Kong. The Bankruptcy Court correctly concluded that the focus of the avoidance and

24  recovery statutes on which the Trustee sues, 11 U.S.C. §§ 547, 548, and 550, is the

25  initial transfer of funds that depletes the estate, and followed established U.S.

26  Supreme Court authority in holding that the statutes do not apply extraterritorially to

27  the foreign transfers and obligations at issue. And the Court painstakingly reviewed

28  the Trustee's laundry list of inconsequential closing obligations set forth in his initial

and amended complaints, and properly rejected the Trustee's bid for domestic application because such conduct is not the focus of the avoidance and recovery statutes under which the Trustee sues.

The Trustee repeats the same erroneous arguments on appeal, and pleads that equitable considerations supposedly guiding his work should supplant established Supreme Court precedent and the limitations Congress placed on the Trustee's remedies. But "whatever equitable powers remain in the bankruptcy courts must and can only be exercised *within the confines of the Bankruptcy Code*." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) (emphasis added). The appeal should be rejected and the judgment affirmed.

## STANDARD OF REVIEW

The grant of a motion to dismiss for failure to state a claim is reviewed *de novo*. *Pirani v. Slack Techs., Inc.*, 13 F.4th 940, 946 (9th Cir. 2021). The denial of leave to amend is reviewed for abuse of discretion. *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1287 (9th Cir. 2021).

## STATEMENT OF THE CASE

### A.    Factual Background

Zetta Jet PTE was a private air charter business formed in Singapore in July 2015 by Geoffrey Cassidy, James Seagrim, and Matthew Walter, who were its shareholders, directors and operating officers. 5-ER-2299-300 ¶¶ 25, 29, 31, 32.[1]

The transactions at issue began in December 2015 when UL and Glove leased two Bombardier Global 6000 aircraft to Zetta PTE (which are identified as Plane 6 and Plane 7 in the Trustee's pleadings). UL had already purchased Plane 7 earlier in 2015, and utilizing $50 million of funds advanced by UL, Glove purchased Plane 6 from Bombardier pursuant to an aircraft purchase agreement. 5-ER-2326, 2331 ¶¶ 180-81, 204. On December 29, 2015, Zetta PTE leased the two aircraft from UL

---

[1] The Appellant's Excerpts of Record are cited as "Volume-ER-Page."

and Glove for use in its luxury charter business, and entered into two Master Aircraft Finance Leases ("MAFL"). *Id.* ¶ 183, 205. The MAFLs are between two BVI lessors with Chinese ownership and a Singapore lessee, are governed by Singapore law, and provide lease payments to be made from Zetta PTE's Singapore account to UL and Glove in a Hong Kong account. 5-ER-2449, 2607 Exs. A & C, § 34.1; 4-ER-2156-57; 35-ER-10365.

The Trustee alleges the leases were actually secured financings, mischaracterizes the leases as purchases by Zetta PTE, and pleads that the transactions were unfair to Zetta PTE based on non-existent "loan" terms and purported "fair market" or "estate value" concepts for aircraft purchases that did not occur. 5-ER-2325-26, 2328-33 ¶¶ 178, 184, 190, 197, 202, 204, 209, 216. Between January and July 2016, the Trustee alleges Zetta PTE made six contractual lease payments to UL and Glove on the two airplanes, totaling under $12 million. 5-ER-2329, 2333-34 ¶¶ 199, 218; 6-ER-3436-37 Sch. A.

Two months later, in February 2016, TGG invested $19 million in Zetta PTE. 5-ER-2334 ¶ 222. In return, TGG received 10% of Zetta PTE's shares, and Li Qi became a director (but not an officer) of Zetta PTE. *Id.* ¶ 223. UL made a $10 million unsecured loan to Zetta PTE in February 2016, and a second $10 million unsecured loan in July 2016. 5-ER-2335, 2338 ¶¶ 224, 247. Over the next year, Zetta PTE paid approximately $2.3 million in interest on the loans in accordance with the loan agreement. 5-ER-2318 ¶ 138; 1-ER-261, 280-81 ¶ 259 & Sch. D; 17-ER-4915 Ex. 12-B. The loans are governed by Hong Kong law. 17-ER-4924 Ex. 12-B, § 16).

In September 2016, the UL Defendants sold Plane 6 and Plane 7 to Minsheng Financial Leasing Co, a Chinese company unrelated to the UL Defendants, and related entities (the "Minsheng Transaction"), who leased them back to Zetta PTE. 5-ER-2340-41 ¶¶ 253-55. The Sale Leaseback Agreements are governed by English law. 5-ER-2697, 2726 Exs. E & F, § 11.3(a). The UL Defendants received two

- 3 -

payments of $27.5 million from Minsheng for title to the two planes. 5-ER-2701, 2730 Exs. E & F, Sch. 2). The payments were made from Minsheng's account in Hong Kong to UL's account in Hong Kong, through an escrow. 4-ER-2158; 5-ER-2701, 2730 Exs. E & F, Sch. 2. The parties also entered into a "Clarification" under which outstanding payment obligations on Plane 6 were confirmed as obligations of Zetta PTE, in the form of an unsecured note. 5-ER-2344 ¶¶ 264, 265.[2] Over the next year, Zetta PTE made approximately $10 million in payments on the note from its Singapore bank account to UL's Hong Kong bank account. 4-ER-2159-60; 5-ER-2378, 3438-40 ¶ 466 & Sch. B.

In June 2017, UL made a third unsecured loan of $15 million to Zetta PTE. 5-ER-2356 ¶¶ 319, 320, 323; 17-ER-4915 Ex. 12-B. The loan is governed by Hong Kong law. 17-ER-4924 Ex. 12-B, § 16. In connection with this loan, TGG received 20% of Zetta PTE's stock directly from other Zetta PTE shareholders. 5-ER-2356 ¶ 321. Zetta PTE made no payments on this loan. 1-ER-261, 280-81 ¶ 259 & Sch. D.[3] Zetta PTE filed bankruptcy just two months later.

By the time Zetta PTE filed bankruptcy, based on the Trustee's own allegations the UL Defendants had leased two Global 6000 airplanes to Zetta PTE for its charter business, loaned Zetta PTE $35 million, and invested $19 million in Zetta PTE for worthless equity. 5-ER-2335, 2338 ¶¶ 224, 247; 5-ER-2356 ¶¶ 319, 320, 323; 5-ER-2334 ¶ 222. In return, the Trustee alleges the UL Defendants received $24.3 million in contractually-required lease and loan payments from Zetta PTE, 5-ER-2375 ¶ 452; 6-ER-3436-37 Sch. A; 4-ER-2159-60; 5-ER-2378 ¶ 466(b) & 6-ER-3438-40 & Sch. B; 1-ER-261, 280-81 ¶ 259 & Sch. D; 17-ER-4915, 4917 Ex. 12-B—a net gain to Zetta PTE and a net cash loss to the UL Defendants of $30 million.

---

[2] This is the basis of Glove's $43 million proof of claim. 1-ER-122 ¶¶ 4-6.

[3] This loan and the two previous $10 million loans made by UL to Zetta PTE are the basis for UL's $35 million proof of claim. 1-ER 98-99 ¶¶ 2-8.

It is therefore not surprising that the Trustee readily admits the UL Defendants were *the primary victims* of the alleged fraudulent scheme of Geoffrey Cassidy that underlies his case. 5-ER-2309, 2317-18, 2324, 2334-35, 2338, 2356 ¶¶ 95, 131, 138, 174, 222, 224, 247, 323. The Trustee alleges that "Li [Director of the UL Defendants] was Zetta PTE's first (and ultimately only) outside investor," 5-ER-2324 ¶ 174, that "the only reason why Cassidy's scheme does not fit squarely within the Ponzi-scheme framework … is because he was only able to secure one significant investor, Li Qi, before his scheme came crashing down," and that Cassidy's schemes were "detrimental to the Debtor's investor, Li Qi." 16-ER-4823, 4831, 4838. As the Trustee explains it, Cassidy "us[ed] a fraudulent business plan promising unattainable success [to] induce[] Li to invest with promises of outsized returns" and that Zetta PTE's business plan was unsustainable even "by December 2015, before any transactions [with the UL Defendants] had closed." 5-ER-2309, 2315, 2317, 2323 ¶¶ 95, 128, 134, 170. The Trustee also concedes the UL Defendants brought *their own* assets to Zetta PTE—they already owned Plane 7 and purchased Plane 6 (for $50 million) before any transactions with Zetta PTE, 5-ER-2310-11, 2317, 2324, 2326 ¶¶ 98 n.3, 102, 131, 175, 177, 180; that "[s]hortly after helping Zetta [lease] the two Bombardier Globals," the UL Defendants invested and loaned an additional $54 million into Zetta PTE, 5-ER-2334-35, 2338, 2355-56 ¶¶ 222-24, 247, 318, 323; and that the debtors only made "headway" in their business "after they received investments from Li." 5-ER-2322 ¶ 163. Indeed, the Trustee admits the UL Defendants were paid back just "more than half" of their $152 million in investments and loans in Zetta PTE. 5-ER-2318 ¶ 138.

**B.    Proceedings in the Bankruptcy Court**

**1.  The Complaint**

Zetta PTE and Zetta USA filed bankruptcy petitions on September 15, 2017. After a two-year investigation, on the last day before the expiration of the statute of limitations, the Trustee filed an adversary complaint against the UL Defendants on

- 5 -

September 13, 2019, asserting claims under 11 U.S.C. §§ 547, 548, 550, 105(a), 502 and 362. 1-ER-221. The Trustee alleged the payments to the UL Defendants were fraudulent transfers under § 548, preferential transfers under § 547, and could be recovered under § 550. 1-ER-251-54, 256, 258, 261 ¶¶ 175-76, 182, 191-92, 212, 233, 259. The Trustee sought nearly $80 million from the UL Defendants and Li Qi (including $55 million that came from Minsheng, not Zetta PTE), and sought to recharacterize UL's last $15 million loan to Zetta PTE as worthless equity. *Id.*; *see also* 1-ER-244 ¶ 130; 5-ER-2384 ¶ 503.

## 2.  The First Dismissal Order

The Bankruptcy Court dismissed the Trustee's complaint on July 29, 2020 in a comprehensive 50-page ruling. 4-ER-2126. The Bankruptcy Court thoroughly reviewed the law on the presumption against extraterritorial application of federal statutes, explaining that "the question is not whether a court thinks 'Congress would have wanted' a statute to apply to foreign conduct … but whether Congress has 'affirmatively and unmistakably instructed that the statute will do so," citing *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2100 (2016) and *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none.") 4-ER-2134-43, 2135. Thus, the Bankruptcy Court reviewed the statutory text and extensive case law on the statutes the Trustee sued under, and concluded that none had extraterritorial application. 4-ER-2135-43.

The Bankruptcy Court next addressed whether this case involves an extraterritorial application of the statute. The Bankruptcy Court exhaustively analyzed the relevant transactions and transfers challenged by the Trustee, based on the Trustee's own allegations and incorporation by reference doctrine. 4-ER-2132-34, 2143-65. The Court reasoned that the relevant "'focus' of the avoidance and recovery provisions (§§ 547, 548, and 550) [  ] is 'the initial transfer that depletes the property that would have become property of the estate,'" 4-ER-2151, and ruled

- 6 -

that the transactions and transfers were between foreign parties utilizing foreign bank accounts, and governed by Singapore, English and Hong Kong law. 4-ER-2156-65. The Bankruptcy Court also rejected the Trustee's erroneous theory that a party's filing of a proof of claim in a bankruptcy case can constitute a waiver of the presumption against extraterritoriality, noting that only Congress can expand the scope of federal statutes, not litigants. 4-ER-2165-69. The Trustee was granted leave to amend the pleaded claims. 4-ER-2175.

### 3. The Amended Complaint

The Trustee filed an Amended Complaint on March 29, 2021. 5-ER-2292. The Trustee asserts claims against the UL Defendants under 11 U.S.C. §§ 548, 550, 105(a), 502 and 362. Though he had been granted leave to amend, the Trustee abandoned his preference claims under § 547 by failing to replead them. 5-ER-2388 n.7. The UL Defendants again moved to dismiss, and Li Qi moved to dismiss for lack of personal jurisdiction. 7-ER-3446; 8-ER-3681.

### 4. The Final Dismissal Order

On August 17, 2021, the Bankruptcy Court dismissed the Trustee's claims again, this time with prejudice, in another exhaustively reasoned 42-page ruling. 35-ER-10350. The Bankruptcy Court reiterated the conclusion in its earlier ruling that the presumption against extraterritoriality of federal statutes applies absent clear congressional intent to the contrary. 35-ER-10366. The Bankruptcy Court reviewed that statutes relied on by the Trustee and reiterated its conclusion that they did not apply extraterritorially. 35-ER-10366-67, 10383-86, 10388-89.

The Bankruptcy Court also considered the Trustee's attempt to shift the focus of his claims under § 548 from avoidance of foreign transfers to the avoidance of "obligations" to recover transfers made on account of such obligations. 35-ER-10366-77. But the Bankruptcy Court recognized that the Trustee failed to "directly address the 'focus' of § 548." 35-ER-10373. The Bankruptcy Court relied on applicable case law to conclude that with respect to the avoidance of "obligations,"

the focus of § 548 is on obligations "that 'unfairly deplete the debtor's estate.'" 35-ER-10375. The Bankruptcy Court again thoroughly analyzed the underlying transactions and various U.S. obligations and ties pleaded by the Trustee, and correctly held that "[n]one of the activity that the Trustee highlights pertains to the focus of § 548, which is the transfer or obligation that *depletes* the estate." 35-ER-10375-77. In addition, the Bankruptcy Court rejected the Trustee's argument that he could recover the foreign transfers by avoiding the allegedly domestic obligations, correctly holding that § 550 only provides a remedy for avoided transfers, not obligations. 35-ER-10377-80.

The Bankruptcy Court also ruled the UL Defendants did not waive the presumption against extraterritoriality by filing proofs of claim. The Bankruptcy Court rejected the Trustee's attempt to expand § 548 based on the Trustee's notions of fairness and equity, and pointed out that "a court's jurisdiction to adjudicate a matter is separate from whether a statute regulates extraterritorial conduct." 35-ER-10380-83.

The Bankruptcy Court dismissed the Trustee's remaining claims because recharacterization of the third loan was outside of the Bankruptcy Court's authority under § 105(a) and not supported by applicable law, 35-ER-10383-85, and dismissed the Trustee's newly pleaded recharacterization counts because they sought extraterritorial application of § 105(a) and were beyond the scope of the Court's grant of leave to amend. 35-ER-10385-88. And *finally*, the Bankruptcy Court dismissed the Amended Complaint without leave to amend, fully analyzing the Rule 15 factors while noting that the Trustee had failed to address whether leave to amend should be granted. 35-ER-10391-93.

## SUMMARY OF ARGUMENT

The Bankruptcy Court correctly dismissed the Trustee's §§ 548 and 550 claims because they involve an improper extraterritorial application of the statutes. These statutes contain no indication that they apply extraterritorially, and "[w]hen a

- 8 -

1  statute gives no clear indication of an extraterritorial application, it has none."

2  *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010).

3       To determine whether a case involves a domestic application of a statute, the

4  Court must look to whether the conduct that is the "focus" of the statutes occurred

5  in the United States. *Morrison*, 561 U.S. at 266. Because the "focus" of §§ 548 and

6  550 are initial transfers that deplete the debtor's estate or obligations to make such

7  transfers, courts assessing extraterritoriality look to the domicile of the debtor and

8  the location from which the debtor's property was transferred. *In re Picard,* 917

9  F.3d 85, 100 n.9 (2d Cir. 2019). Here, both factors demonstrate this case calls for an

10  extraterritorial application of the statute: the Debtor is a Singapore entity who

11  transferred funds from its Singapore bank account, and the transfers were made to

12  foreign parties with foreign accounts.

13       The Trustee contends that even if the transfers at issue were extraterritorial,

14  he can still recover transfers made pursuant to domestic obligations. This argument

15  fails because the obligations were all non-domestic in nature: they required a foreign

16  debtor to transfer its foreign assets. Moreover, even if the obligations at issue were

17  domestic (which they were not), the plain language of § 550 permits recovery only

18  of avoided *transfers*, not *obligations*. 11 U.S.C. § 550(a).

19       The Trustee's argument that the filing of proofs of claims by certain UL

20  Defendants unshackled the Bankruptcy Court from the territorial limitations of

21  §§ 548 and 550 and unlocked a roving authority of the Bankruptcy Court to

22  administer the estate according to general principles of equity also fails. "A

23  bankruptcy court's equitable powers must and can only be exercised within the

24  confines of the Bankruptcy Code." *Willms v. Sanderson*, 723 F.3d 1094, 1103 (9th

25  Cir. 2013) (internal quotation omitted).

26       Counts 8 and 9 of the Amended Complaint were entirely ancillary to the

27  Trustee's §§ 548, and 550 claims. Sections 548 and 550 only permit a trustee to

28  avoid and recover transfers of *the debtor's* property, not property of third-parties.

The Trustee, however, sought to recover tens-of-millions of dollars that *Minsheng*, not Zetta PTE, transferred to certain UL Defendants. In an attempt to correct this glaring deficiency, the Trustee sought in Counts 8 and 9 to recharacterize certain agreements in a manner he contends would transform Minsheng's property into Zetta PTE's property. The Bankruptcy Court correctly dismissed these ancillary counts after determining the main §§ 548 and 550 counts required an extraterritorial application of the statute.

The Trustee's claim in Count 6 that the Bankruptcy Court had authority to recharacterize the third loan as equity pursuant to § 105(a) fails because controlling Ninth Circuit authority holds that "courts may not rely on § 105(a) and federal common law rules of their own creation to determine whether recharacterization is warranted." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1149 (9th Cir. 2013) (internal quotation omitted).

The Bankruptcy Court committed no error, and its judgment should be affirmed.

## **ARGUMENT**

## I.    **The Trustee's Claims Require an Impermissible Extraterritorial Application of the Statute.**

The Bankruptcy Court correctly dismissed the Trustee's claims under § 548 that sought to recover transfers made between *foreign* entities (Singapore, China, and BVI), between *foreign* bank accounts (in Singapore and Hong Kong), and governed by contracts applying *foreign* law (of Singapore and England). The Bankruptcy Code's avoidance statutes do not apply extraterritorially to foreign transfers under clearly established Supreme Court authority. The Trustee's alternative argument to sidestep the extraterritoriality doctrine based on conduct in the United States is misguided because the domestic contacts on which the Trustee relies do not concern the "focus" of § 548—that is, the initial transfer of funds that

- 10 -

1  depletes the estate. The Bankruptcy Court rightly concluded that the Trustee's

2  position requires an impermissible extraterritorial application of the Bankruptcy

3  Code.

4      **A.    Section 548 Does Not Regulate Foreign Transfers.**

5      The Trustee's lead argument—that § 548 governs extraterritorial transfers—

6  has been soundly rejected by numerous courts as inconsistent with Supreme Court

7  precedent and incompatible with the statutory text. The Bankruptcy Court correctly

8  rejected this argument.

9      "It is a longstanding principle of American law 'that legislation of Congress,

10  unless a contrary intent appears, is meant to apply only within the territorial

11  jurisdiction of the United States.'" *EEOC v. Arabian American Oil Co.*, 499 U.S.

12  244, 248 (1991) (quoting *Foley Bros. v. Filardo*, 336 U.S. 281, 285 (1949)). This

13  presumption against extraterritoriality "serves to protect against unintended clashes

14  between our laws and those of other nations which could result in international

15  discord." *Id*.

16      The extraterritoriality analysis proceeds in two steps. First, courts analyze

17  whether "the presumption against extraterritoriality has been rebutted—that is

18  whether the statute gives a clear, affirmative indication that it applies

19  extraterritorially." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101

20  (2016). If the proponent does not rebut the presumption, then at the second step,

21  courts examine a statute's "focus" to determine whether the case involves a

22  domestic or foreign application. *Id*. If the relevant conduct occurred in a foreign

23  country, then the case involves an impermissible extraterritorial application of U.S.

24  law, even if some conduct occurred in the United States. *Id*.

25      At step one, the Trustee does not contend that § 548 itself contains any "clear,

26  affirmative indication that it applies extraterritorially." Ordinarily that would end

27  the inquiry, because "[w]hen a statute gives no clear indication of an extraterritorial

28  application, it has none." *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247,

- 11 -

255 (2010). The Trustee's implicit concession is well taken, as "[n]othing in the text of § 548 indicates congressional intent to apply it extraterritorially." *In re Bankr. Estate of Midland Euro Exch. Inc.*, 347 B.R. 708, 717 (Bankr. C.D. Cal. 2006); *accord In re CIL Ltd.*, 582 B.R. 46, 84 (Bankr. S.D.N.Y. 2018).

With no text to point to in § 548, the Trustee instead relies solely on "context," Appellant's Opening Brief ("Br.") 17, requiring a series of strained inferences based on incomplete quotations of separate statutory provisions. Specifically, the Trustee argues that because § 548 allows a trustee to avoid certain transfers "of an interest of the debtor in property," and because § 541(a) provides that an "estate is comprised" of certain "property, wherever located," then "§ 548 incorporates the language of §541, which expressly applies extraterritorially." Br. 18. This argument fails for multiple reasons.

First, the text. The Bankruptcy Code does not define "property"; instead, § 541(a) defines "property of the estate" to include certain property "wherever located." But the phrase "property of the estate" does *not* appear in § 548. The Trustee tries to elide that fact by misquoting the text of § 541(a)(1) with a misleading ellipsis, claiming that "§ 541(a) defines property of the estate as all 'interests of the debtor in property … wherever located and by whomever held." Br. 18. That is incorrect. Section 541(a)(1) provides that "interests of the debtor in property" (the phrase used in § 548) only constitutes property of the estate when those interests are held "as of the commencement of the case." It is undisputed that the *pre-petition* transfers at issue here did not (and could not) constitute an interest of the debtor *as of the commencement of the case*.

The Trustee's reliance on extraterritorial language in § 541(a) is doubly misplaced because "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Morrison,* 561 U.S. at 265; *accord RJR Nabisco,* 136 S. Ct. at 2102. The absence of

1    extraterritorial language in § 548 stands in stark contrast to § 541(a), indicating

2    congressional intent that the former should apply only domestically.

3         That fallacy reveals a second error in the Trustee's position. Section 541(a)(3)

4    provides that the property of the estate also includes "any interest in property that

5    the trustee recovers under Section … 550" based on an avoided transfer under

6    § 548. The Trustee's position would render § 541(a)(3) superfluous, as under the

7    Trustee's theory, § 541(a)(1) already includes property recovered under § 548. *See,*

8    *e.g.*, *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir. 1992)

9    ("If property that has been fraudulently transferred is included in the § 541(a)(1)

10   definition of property of the estate, then § 541(a)(3) is rendered meaningless with

11   respect to property recovered pursuant to fraudulent transfer actions."); *accord*

12   *Rajala v. Gardner*, 709 F.3d 1031 (10th Cir. 2013).

13        Worse still, the Trustee's position would effectively overwrite § 541(a)(3),

14   which makes clear that fraudulently or preferentially transferred property is *not*

15   estate property *unless and until* it is recovered by the trustee. This conclusion flows

16   from the text's use of the present tense: "Such estate *is* comprised of … any interest

17   in property that the trustee *recovers* under [§ 550]." 11 U.S.C. § 541(a)(3)

18   (emphasis added). But to support the Trustee's position, § 541(a)(3) would have to

19   be rewritten in the future tense ("will recover") or made conditional ("could

20   recover") to encapsulate pre-petition transfers as "property of the estate." The Court,

21   of course, is not free to rewrite the statute. *See In re Midland Euro*, 347 B.R. at 708

22   (the Code is "very clear to any ordinary reader": fraudulently transferred property

23   only becomes property of the estate when the transfer has been set aside); *accord*

24   *Hirsch*, 980 F.2d at 131; *Rajala*, 709 F.3d at 1039. And as the Supreme Court has

25   explained, § 541(a) is a *limitation* on the trustee's avoiding powers, not an

26

27

28

APPELLEES' ANSWERING BRIEF

expansion of § 548, as the Trustee argues here. *Begier v. IRS*, 496 U.S. 53, 59 (1990).[4]

As a last resort, the Trustee invokes policy rationales that it contends might motivate Congress to amend the statute to apply extraterritorially. But the question is not whether a court thinks "Congress would have wanted" a statute to apply to foreign conduct "if it had thought of the situation before the court," but whether Congress has "affirmatively and unmistakably instructed that the statute will do so." *RJR Nabisco*, 136 S. Ct. at 2100; *see also Morrison*, 561 U.S. at 270 (in rejecting a policy-based argument on why U.S. securities laws should apply to certain transactions occurring abroad, the Supreme Court observed that "[i]t is our function to give the statute the effect its language suggests, however modest that may be, not to extend it to admirable purposes it might be used to achieve"). The Ninth Circuit has squarely held that policy considerations alone do not overcome the presumption against extraterritoriality. *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1096 (9th Cir. 1994). The Trustee should direct its policy arguments to Congress, not this Court.

Based on the text, context, and history of the Bankruptcy Code, the substantial majority of courts to confront the Trustee's extraterritoriality argument have rejected it. *See In re CIL Ltd.*, 582 B.R. 46, 92 (Bankr. S.D.N.Y. 2018); *In re Ampal-Am. Israel Corp.*, 562 B.R. 601, 612 (Bankr. S.D.N.Y. 2017); *In re Sherwood Invsts. Overseas Ltd.*, No. 15-cv-1469, 2016 WL 5719450, at *11 (M.D. Fla. Sept. 30, 2016); *In re Sherwood Invsts. Overseas Ltd.*, No. 10-BK-584, 2015 WL 4486470, at *21 (Bankr. M.D. Fla. July 22, 2015); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 513 B.R. 222, 228 (S.D.N.Y. 2014); *In re*

---

[4] There is nothing "inconsistent" (Br. 18) about limiting § 548 to domestic transfers and also recognizing as property of the estate any recovered assets "wherever located." If the disallowed *transfer* were domestic, then assets recovered would be "property of the estate" no matter where those assets were located.

APPELLEES' ANSWERING BRIEF

1   *Midland Euro Exch. Inc.*, 347 B.R. 708, 718 (Bankr. C.D. Cal. 2006); *In re Maxwell*

2   *Commc'n Corp. plc*, 186 B.R. 807, 820-21 (S.D.N.Y. 1995).

3        Ignoring nearly all of these cases, the Trustee relies on a pre-*Morrison*

4   decision from the Fourth Circuit: *In re French*, 440 F.3d 145 (4th Cir. 2006). The

5   Trustee repeats that court's analytical error by contending that "Congress made

6   manifest its intent that § 548 apply to all property that, absent a prepetition transfer,

7   *would have been* property of the estate." Br. 17-18 (quoting *In re French*; emphasis

8   added). But as explained above, that conclusion—which relies on the conditional

9   phrase "would have been"—does not follow from the text or context of the statute

10  itself. As another bankruptcy court in this district exasperated, "*In re French* totally

11  ignores § 541(a)(3) and uses an unclear and convoluted method to reach its

12  conclusion," *Midland Euro*, 347 B.R. at 719. That court deduced that the Fourth

13  Circuit's "true reason" to extend § 548 extraterritorially was driven by its policy

14  preference, which cannot override *Morrison*'s command that the court identify a

15  "clear, affirmative indication that [the statute] applies extraterritorially." *Id*. This

16  Court likewise should reject the Trustee's textually-convoluted, policy-driven

17  arguments and join the majority of courts recognizing that § 548 does not apply

18  extraterritorially.

19        **B.     The relevant conduct occurred abroad.**

20        At step two of the extraterritoriality analysis, a court "must look to a statute's

21  'focus' to determine whether a case involves a domestic application of that statute."

22  *Picard*, 917 F.3d at 96.

23        If the conduct relevant to the statute's focus occurred in the United
24        States, then the case involves a permissible domestic application even if
          other conduct occurred abroad; but if the conduct relevant to the focus
25        occurred in a foreign country, then the case involves an impermissible
          extraterritorial application regardless of any other conduct that occurred
26        in U.S. territory.

27  *Id*. (quoting *RJR Nabisco*, 579 U.S. at 337). "[T]he focus of a statute is the object of

28  its solicitude, which can include the conduct it seeks to regulate, as well as the

- 15 -

1  parties and interests it seeks to protect' or vindicate." *Id*. (quoting *WesternGeco LLC*

2  *v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137 (2018) (internal quotation

3  omitted.))

4      The Trustee divides this second step into two subparts: first, whether the

5  disputed "transfers" occurred domestically, and second, whether the disputed

6  "obligations" were incurred domestically. Each argument is addressed in turn.

7              **1.  The transfers were extraterritorial.**

8      In *Picard*, the Second Circuit analyzed the focus of § 548 and held that "[t]he

9  relevant conduct … is the debtor's fraudulent *transfer* of property, not the

10  transferee's *receipt* of property." *Picard*, 917 F.3d at 100. The court reasoned that

11  the purpose of § 548 is to "allow[] a trustee, for the protection of an estate and its

12  creditors, to avoid a debtor's fraudulent, hindersome, or delay-causing property

13  transfer that depletes the estate." *Id.* at 98. Thus, "the harm to the estate" that § 548

14  seeks to regulate occurs "with the initial transfer" by the debtor. *Id.* at 97. Because

15  the statute regulates the debtor's conduct, not the transferee's receipt of the

16  property, "[f]actoring the transferee's receipt of property … would … misread the

17  Bankruptcy Code's avoidance and recovery provisions." *Id.* at 100. Applying this

18  standard, the Second Circuit held that the transfers at issue in *Picard* fell within the

19  statute's focus because they were made by a "domestic debtor [who] commit[ted]

20  fraud by transferring property from a U.S. bank account." *Id.*

21      While *Picard* left open whether either of the two relevant factors—"(1) the

22  debtor is a domestic entity, and (2) the alleged fraud occurred when the debtor

23  transferred property from U.S. bank accounts"—would be sufficient standing on its

24  own to constitute a domestic application of the statute, resolution of the current case

25  is straightforward because *neither* factor is present. *Picard*, 917 F.3d at 99 n.9. The

26  Trustee seeks to recover funds transferred (1) from Zetta PTE, a Singapore entity,

27  out of its Singapore bank account and (2) from Minsheng, a Chinese entity, through

28  its Hong Kong account. 4-ER-2157-59, 2162. Thus, none of the conduct within the

- 16 -

1  focus of the statute occurred in the United States, *Picard*, 917 F.3d at 100, and the

2  Bankruptcy Court correctly held that the Trustee therefore seeks an *extraterritorial*

3  application of the statute, not a domestic one.

4  The Trustee ignores the location of the challenged transfers and transferors to

5  contend instead that the extraterritoriality analysis "turns on whether the transfers *to*

6  *HSBC NY* – the contractual 'payment location' – were domestic or extraterritorial."

7  Br. at 20 (emphasis added). By focusing on the transferee's receipt, the Trustee gets

8  the analysis exactly backwards: "the focus of § 550(a) … is on the debtor's act of

9  transferring property *from* the United States" because "§550(a) regulates a debtor's

10  unlawful conduct," not the transferee's receipt of the property. *Picard*, 917 F.3d at

11  99 (emphasis added).

12  *In re Arcapita Bank B.S.C.(c)*, 575 B.R. 229 (Bankr. S.D.N.Y. 2017), on

13  which the Trustee relies (Br. at 21-22), is readily distinguishable. As the Bankruptcy

14  Court below explained, the debtor in *Arcapita* "sent money *from its own account* in

15  New York" to a creditor's correspondent account in New York. 4-ER-2209

16  (emphasis added). Thus, *Arcapita* met at least one of the *Picard* factors because it

17  involved a transfer *from the debtor's* domestic account. *Picard*, 917 F.3d at 100.

18  And to the extent *Arcapita* intimated that "the *receipt* of the transferred funds in

19  New York" is the relevant focus of the avoidance statutes (Br. at 21), *Picard*

20  expressly overruled that erroneous analysis.

21  By contrast here, the transfers in this case originated in Singapore or Hong

22  Kong and went through a New York correspondent account before arriving in UL's

23  Hong Kong bank account. 4-ER-2157-59, 2162. As the Bankruptcy Court noted,

24  finding a domestic application in this scenario would provide "no 'limiting

25  principle' given that New York is the financial capital of the world, and many wire

26  transfers and other financial transactions pass through New York." 4-ER-2209

27  (citing *In re Maxwell Commc'n Corp.*, 186 B.R. 807, 817-18 n.5 (S.D.N.Y. 1995);

28  *Banco Safra S.A. - Cayman Islands Branch v. Samarco Mineracão*, 2019 WL

- 17 -

2514056, at *5 (S.D.N.Y. 2019)). The Bankruptcy Court properly concluded that the use of correspondent accounts "does not affect the extraterritoriality analysis." 35-ER-10376.

Indeed, U.S. correspondent banks are used to facilitate dollar-denominated transactions, which account for "96 percent of trade invoicing in the Americas, 74 percent in the Asia-Pacific region, and 79 percent in the rest of the world [excluding Europe]." C. Bertaut, *et al.*, "The International Role of the U.S. Dollar," FEDS Notes (Oct. 6, 2021).[5] Thus, under the Trustee's sweeping theory—that the mere participation of an intermediary U.S. correspondent bank is sufficient to make a foreign transfer domestic (Br. 20)—the vast majority of global trade would be subject to the Bankruptcy Code, not because Congress so intended, but because the dollar functions as a global reserve currency. The Bankruptcy Court correctly refused to render the presumption of extraterritoriality a "craven watchdog" that retreats to its kennel anytime a wire transaction is routed through New York to complete a dollar-denominated transaction. *Morrison*, 561 U.S. at 266.

The Trustee's reliance (Br. 22) on cases construing statutes governing transportation of stolen goods (18 U.S.C. § 2314) and money laundering (18 U.S.C. § 1956(a)(2)(A)) to flip the focus of the statute to the transferee's receipt of money is unpersuasive because the focus of those RICO predicate-act statutes is different from the focus of the Bankruptcy Code's avoidance and recovery provisions. The focus of the former statutes is to prevent parties from using domestic banks as conduits for stolen or laundered money. *See United States v. Prevezon Holdings, Ltd.*, 251 F. Supp. 3d 684, 692 (S.D.N.Y. 2017) ("In enacting 18 U.S.C. § 2314, Congress was primarily concerned with the movement of stolen property across state lines.") (internal quotation omitted); *United States v. Ho*, 984 F.3d 191, 203

---

[5] https://www.federalreserve.gov/econres/notes/feds-notes/the-international-role-of-the-u-s-dollar-20211006.htm

APPELLEES' ANSWERING BRIEF

1    (2d Cir. 2020) (holding statute expressly governed any transfer "to a place in the

2    United States") (quoting 18 U.S.C. § 1956(a)(2)(A)).

3        By contrast, the Bankruptcy Code focuses on a debtor's "initial transfer that

4    fraudulently depletes the estate," not the use of U.S. banks in general as conduits for

5    transactions. *Picard*, 917 F.3d at 98. The Bankruptcy Court correctly refused to

6    import the reasoning of cases construing totally unrelated statutes to broaden the

7    focus of the Bankruptcy Code's avoidance and recovery provisions. *See Nestle USA,*

8    *Inc. v. Doe*, 141 S. Ct. 1931, 1936 (2021) (holding plaintiff must establish "conduct

9    relevant to *the statute's focus* occurred in the United States") (emphasis added).

10       Moreover, even if a creditor's receipt of property were the focus of the statute

11   (which it is not), the Trustee's claims still fail because UL received the funds in its

12   Hong Kong bank account, not in the U.S. 4-ER-2157-59, 2162. The domestic bank

13   account that the Trustee identifies is HSBC's own[6] correspondent bank account, not

14   UL's account. 4-ER-2147-48. HSBC is not a "transferee" for purposes of § 550

15   because it never had "dominion" over the funds, *i.e.* the "legal authority over the

16   money and the right to use the money however it wished." *In re Incomnet, Inc.*, 463

17   F.3d 1064, 1070 (9th Cir. 2006). Rather, HSBC had an obligation to immediately

18   transfer the funds to UL's Hong Kong account. *See, e.g.,* 5-ER-2462. Because HSBC

19   is not a "transferee" subject to § 550, HSBC's receipt of funds in its New York

20   account is not "conduct [the statute] seeks to regulate." *Picard*, 917 F.3d at 96

21   (internal quotation omitted). And because HSBC's receipt of the funds is not "the

---

[6] The Amended Complaint alleged that HSBC's New York correspondent account belonged to UL. 5-ER-2366 ¶ 406. After the Bankruptcy Court pointed out at the hearing that the exhibits attached to the Amended Complaint contradict this allegation, the Trustee conceded he was "not disagreeing" it was an "HSBC account" and explained he failed to "precisely summarize" the transaction. 35-ER-10291-92. The Bankruptcy Court ultimately disregarded the allegation under the doctrine that an exhibit controls over an inconsistent allegation in the complaint, and the Trustee does not challenge this part of the ruling on appeal. 35-ER-10376 (citing *Nguyen v. Bank of Am., NA*, 563 Fed. Appx. 558, 558 (9th Cir. 2014)).

- 19 -

1    conduct [the statute] seeks to regulate," that event is not a basis for finding a

2    domestic application of the statute. *Id.* at 97.

3          IATS' receipt of Minsheng's funds falls outside the focus of the statute for

4    the same reason. The Trustee concedes that IATS held funds in escrow (2-ER-598)

5    and thus did not have the right "to use the money however it wished," as would be

6    required to constitute a transferee for §550 purposes. *Incomnet*, 463 F.3d at 1070.

7    As the Bankruptcy Court held, because IATS is not a "transferee," its receipt of

8    funds is not conduct the statute seeks to regulate, is outside the statute's focus, and

9    is not a basis for finding a domestic application of the statute. 4-ER-2159.

10         The Trustee attempts to discount *Incomnet* on the grounds that "[d]ominion

11   and control are only relevant to the identity of the initial transferee under § 550

12   (which governs the liability of a transferee), not whether the debtors had an interest

13   in the funds for purposes of § 548." Br. 24; *see also* Br. 19–20 (citing cases

14   assessing whether a debtor has interest in property). That argument is beside the

15   point: whether the debtor had an interest in the funds does not answer the question

16   of whether the case involves a *domestic transfer*. If it were otherwise, the

17   presumption of extraterritoriality would be illusory because a debtor can have an

18   interest in funds that *never* touch the United States. The relevant question is whether

19   IATS' receipt of property is "the conduct [the statute] seeks to regulate." *Picard*,

20   917 F.3d at 96 (internal quotation omitted). Because, pursuant to *Picard* and

21   *Incomnet*, IATS' receipt of funds as an escrow holder is not regulated by the

22   Bankruptcy Code, its receipt of funds cannot establish a domestic application of the

23   statute.

24         *Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic*

25   *Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016), on which the Trustee relies (Br. 24), does

26   not even address the question presented here. That case held a court may consider a

27   transfer to a New York correspondent bank account for purposes of assessing

28   personal jurisdiction over a defendant. *Bahrain Islamic Bank*, 549 B.R. at 68. When

- 20 -

1   conducting such an analysis, a court may consider a contact so long as it "is not

2   completely unmoored from one of the elements of the plaintiff's cause of action."

3   *Id.* at 68 (internal quotation omitted). The test for determining extraterritoriality is

4   much more demanding than the "completely unmoored" standard: "if the conduct

5   relevant to the focus occurred in a foreign country, then the case involves an

6   impermissible extraterritorial application *regardless of any other conduct that*

7   *occurred in U.S. territory*." *RJR Nabisco*, 579 U.S. at 337 (emphasis added).

8   Because the use of an escrow or correspondent bank account is outside the focus of

9   §§ 548 and 550, it is not relevant to the extraterritoriality analysis, even if

10  potentially relevant to establishing personal jurisdiction.

11          Finally, the Trustee contends the Bankruptcy Court applied a pre-*Morrison*

12  "component-events test" that the Trustee contends is of "questionable viability"

13  post-*Morrison*. Br. at 22-23 (citing *In re Maxwell Commc'n Corp.*, 186 B.R. 807,

14  816-17 (S.D.N.Y. 1995)). The Bankruptcy Court carefully and meticulously applied

15  *Morrison*. *See* 4-ER-2149-56.

16          The Trustee further contends on this point that the Bankruptcy Court

17  misapplied the pre-*Morrison* test because it allegedly gave insufficient weight to the

18  existence of FAA registrations, maintenance of the aircraft at a U.S. airbase, the

19  location of the closings, use of nominal trustees, and payments denominated in

20  dollars. Br. 23. The Trustee's argument fails because the Bankruptcy Court correctly

21  discounted these factors as irrelevant to the post-*Morrison* "focus" test. 4-ER-2149-

22  51, 2155, 2163-65. Indeed, the Trustee does not even attempt to argue that these

23  factors are relevant under *Morrison*. Br. 23.

24          Because the Trustee seeks to avoid transfers by foreign entities from foreign

25  bank accounts, this case involves an impermissible extraterritorial application of the

26  statute. *Picard*, 917 F.3d at 100.

27

28

### 2.  The obligations were extraterritorial.

After the Bankruptcy Court rejected the Trustee's original invocation of the avoidance statute on the basis that the disputed *transfers* were not domestic, the Trustee shifted gears to contend that the debtor had incurred domestic *obligations*. This argument fares no better.

The Bankruptcy Code gives a trustee power to "avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor … if the debtor … (A) made such transfer or incurred such obligation with actual intent to hinder, delay or defraud …" or for "(B) … received less than reasonably equivalent value in exchange for such transfer or obligation." 11 U.S.C. § 548(a)(1). After assessing the differing functions of the terms "transfer" and "obligation" in the statutory scheme, the Bankruptcy Court held that the focus of the statute's regulation of obligations is on "obligations that 'unfairly deplete the debtor's estate.'" 35-ER-10372 (quoting *Rubin v. Manufacturers Hanover Tr. Co.*, 661 F.2d 979, 989 (2d Cir. 1981)).

Applying this standard, the Bankruptcy Court concluded the obligations that depleted the estate were the obligations *to make transfers from Zetta PTE's and Minsheng's foreign bank accounts*. 35-ER-10375-77. Because the obligations of foreign entities to transfer funds from foreign bank accounts are foreign in nature, the Bankruptcy Court concluded that avoiding these obligations involved an extraterritorial application of the statute. *Id.*

Citing no authority, the Trustee contends that if certain steps of the overall transaction touch the United States—such as the release of signature pages in a closing room—then the obligation is "incurred" in the United States and falls within the focus of the statute. Br. 25. The Trustee's argument fails because, as the Bankruptcy Court correctly noted, "the mere existence of domestic conduct does not mean that a statute is being applied domestically." 35-ER-10377 (citing *RJR Nabsico*, 136 S. Ct. at 2101; *Morrison*, 561 U.S. at 266).

- 22 -

In *RJR Nabisco*, for example, a RICO defendant's alleged pattern of racketeering activity consisted "entirely of predicate offenses that were … committed in the United States." *RJR Nabisco*, 136 S.Ct. at 2105. The Supreme Court nevertheless held that plaintiffs who suffered injuries outside the United States could not sue the U.S. defendant for its U.S. conduct because the focus of the statute creating a private right of action was to remedy domestic *injuries*. *Id.* at 2107. Similarly, in *Morrison*, the Supreme Court held that securities fraud committed by Florida-based officers of a Florida-based defendant executed by manipulating financial models in Florida to inflate the defendant's parent's stock traded in Australia involved a foreign application of the statute. *Morrison*, 561 U.S. at 266. The Court explained the focus of the securities fraud statute was "not upon the place where the deception originated, but upon purchases and sales of securities in the United States." *Id.*

Like *RJR Nabisco* and *Morrison*, the focus of § 548 is not upon the place where signature pages were routed (or any of the other incidental conduct cited by the Trustee), but rather on "obligation[s] chargeable against the debtor's property … [that] may unfairly deplete the debtor's estate." *Rubin*, 661 F.2d at 989. Thus, the Bankruptcy Court correctly held that avoiding an obligation of a foreign debtor to deplete a foreign bank account involves an extraterritorial application of the statute. As the Bankruptcy Court explained, nothing in the statute suggests that Congress intended that "the breadth of obligations" regulated by § 548 "should be different from and broader than the breadth of transfers" regulated by the same section." 35-ER-10369. Adopting the Trustee's contention that an obligation to make an *extraterritorial* transfer could somehow be treated as a *domestic* obligation, would improperly "ascrib[e] one word in a statute"—obligation—"a meaning that would give unintended breadth to the statute." *Id.* (applying *Yates v. United States*, 574 U.S. 528, 543 (2015) (holding courts must "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words")).

- 23 -

The Trustee contends that the Bankruptcy Court's construction of the statute would render the term "obligation" superfluous because a trustee "could reach only those obligations that are subsequently paid through transfers made in the U.S.," which are already reachable under the "transfer" language in the statute. Br. 27. Not so. For example, if a California-based debtor promised to transfer $1 million from a California bank account in exchange for one peppercorn, nothing in the Bankruptcy Court's approach stops a trustee from avoiding that obligation, regardless whether the transfer had actually occurred.

The Trustee next contends that the experienced Bankruptcy Judge failed to appreciate the distinction between a "transfer"—which reduces assets on the left side of a balance sheet—and an "obligation"—which increases liabilities on the right side of the sheet. Br. 27. But the Bankruptcy Court carefully explained that an "obligation" is "a contract or promise to perform some act or do something in the future" and that "avoiding an obligation would mean that the debtor is not bound by the agreement or contract," as distinguished from "avoiding a transfer" which "means that the property transferred would not belong to the transferee." 35-ER-10369. The Trustee's contention that the Bankruptcy Court imposed a "property depletion" requirement tantamount to requiring a transfer misstates the decision below. Br. 27. The Bankruptcy Court understood that the Trustee's arguments were simply another way to re-argue its failed transfer position; after all, the Trustee was not seeking to avoid any "obligation" relating to the release of signature pages or other acts mentioned in the Trustee's brief. Br. 25–26.

The Trustee further contends that the Bankruptcy Court "[c]ompound[ed] this error," by concluding that the closing steps cited by the Trustee "did not deplete the estate of anything." Br. 28 (quoting 35-ER-10377). The Trustee asserts that the "closing steps outlined in the FAC are not the 'obligations' the Trustee seeks to avoid," but rather evidence of where the obligations were incurred. Br. 28. But the focus of § 548 is on "obligation[s] … [that] may unfairly deplete the debtor's

- 24 -

1  estate." *Rubin*, 661 F.2d at 989. The Bankruptcy Court committed no error in

2  pointing out that the Trustee relies on factors outside the focus of the statute.

3  At bottom, the Trustee seeks to unwind existing transfers by recasting them as

4  obligations. The Bankruptcy Court rightly saw through that wordplay. Zetta PTE is

5  a foreign entity that undertook obligations to deplete funds located in its (or

6  Minsheng's) foreign bank accounts. The Bankruptcy Court correctly held that

7  avoiding these obligations involves a non-domestic application of the statute.

8  ### C. The Bankruptcy Code does not authorize recovery of extraterritorial transfers based on domestic obligations.

9

10  The Trustee contends that, if the Court finds the obligations at issue are

11  domestic, then the Trustee may recover transfers made pursuant to those

12  obligations, even if the transfers are foreign. Br. 28-29. The Trustee's argument fails

13  because "[w]hile a debtor can recover under Section 550 for a transfer of property, it

14  cannot recover under Section 550 for an obligation incurred." *U.S. Bank Nat. Ass'n*

15  *v. Verizon Commc'ns Inc.*, No. 3:10-CV-1842-G, 2012 WL 3100778, at *4 (N.D.

16  Tex. July 31, 2012). If a trustee "avoids an obligation, the obligation is rendered

17  unenforceable, there is nothing to return and § 550 affords no remedy." *In re Asia*

18  *Glob. Crossing, Ltd.*, 333 B.R. 199, 202 (Bankr. S.D.N.Y. 2005); *In re Foxmeyer*

19  *Corp.*, 290 B.R. 229, 234 (Bankr. D. Del. 2003) (holding "only transfers of property

20  are remediable under § 550(a)(1)"). The statutory text compels this distinction:

21  § 550 authorizes a trustee to seek a recovery "to the extent that a *transfer* is

22  avoided," but it does not authorize any recovery at all based on avoiding an

23  obligation. 11 U.S.C. § 550(a) (emphasis added).

24  *Picard*, on which the Trustee relies, does not support the Trustee's position.

25  *Picard* held that if an initial *transfer* that depletes the estate is domestic, then a

26  trustee may recover any subsequent transfer, even if the subsequent transfer is non-

27  domestic. *Picard*, 917 F.3d at 99. To reach this conclusion, *Picard* relied on express

28  statutory language allowing trustees to recover from "(1) the initial transferee … or

- 25 -

1   (2) *any immediate or mediate transferee of such initial transferee*." 11 U.S.C.

2   § 550(a) (emphasis added); *Picard*, 917 F.3d at 95. The statute, by contrast, does not

3   authorize a trustee to recover transfers made pursuant to an avoided obligation,

4   regardless of whether the obligation is foreign or domestic. *In re Asia*, 333 B.R. at

5   202. Because "it is not up to [the courts] to read other remedies into the carefully

6   articulated set of rights and remedies set out in the Bankruptcy Code," the analysis

7   in *Picard* does not support creating an extra-statutory recovery remedy for avoided

8   obligations. *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002).

9       As the Bankruptcy Court held, *In re Int'l Mfg. Group, Inc*., 2016 WL

10  7163588 (Bankr. E.D. Cal. Dec. 6, 2016), is of no help to the Trustee because "[i]t

11  did not address whether obligations were extraterritorial or domestic or whether a

12  domestic obligation to make a foreign transfer would be sufficient under § 548 to

13  avoid a transfer based on that obligation." 35-ER-10380. Rather, it held that

14  avoidance of an obligation may result in avoidance of a transfer made pursuant to

15  the obligation because transfers made pursuant to unenforceable obligations, by

16  definition, "are not made for reasonably equivalent value, and may be set aside as

17  actually or constructively fraudulent *if the other requirements for actual or

18  constructive fraud are met*." *Int'l Mfg. Group.* at *8 (internal quotation omitted;

19  emphasis added). That is, once the *transfer* is avoided under § 548, a trustee may

20  recover the transfer under the plain language of § 550. *Id.* But, § 550 standing alone

21  does not allow for recovery of the transfer solely as a result of avoiding the

22  underlying obligation.

23      The problem for the Trustee is that the Bankruptcy Court did not dismiss the

24  Trustee's claims based on the Trustee's failure to plead the transfers were for less

25  than reasonably equivalent value. The Bankruptcy Court dismissed the Trustee's

26  claims for failure to establish a different, necessary element of his claim—that the

27  transfers were domestic. 4-ER-2157-59. Because avoiding the underlying

28

- 26 -

obligations would not transform foreign transfers into domestic transfers, *Int'l Mfg. Group* does not cure the deficiency in the Trustee's claims. 35-ER-10379-80.

The Trustee is also incorrect that the ability to avoid obligations is rendered "meaningless," unless a trustee can recover transfers made pursuant to obligations. Br. 31. When a bankruptcy court avoids an obligation, the debtor's estate benefits because it "reduces dollar for dollar the claims that the estate must pay," which itself is an meaningful remedy. *In re MacMenamin's Grill Ltd.*, 450 B.R. 414, 429 (Bankr. S.D.N.Y. 2011). The Court should therefore reject the Trustee's attempt to expand the remedies resulting from avoiding an obligation beyond those contained in the statute.

## II. Filing a Proof of Claim Does Not Alter the Territorial Scope of § 548.

The Trustee contends that, even if § 548 itself does not apply to extraterritorial transactions, that statute can assume extraterritorial scope whenever a creditor files a proof of claim. Br. 32.[7] This argument fails the first step of the *Morrison* test because nothing in § 548 states it applies more broadly when a creditor has filed a proof of a claim. "When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison*, 561 U.S. at 255. And the argument fails the second step of the *Morrison* test because filing a proof of claim is not the "focus" of § 548. *Id.* at 266. The statute is entirely silent with respect to the effect of filing a proof of claims.

Lacking a statutory basis for his position, the Trustee argues that he can use § 548 to avoid extraterritorial transactions because filing a proof of claim

---

[7] The Trustee posits that his avoidance claims are on the same transactions in the UL Defendants' proofs of claim. Br. 31. But contrary to the Trustee's brief, Br. 31, he did not assert avoidance claims in his Amended Complaint on $35 million in unsecured loans that UL made to Zetta PTE in 2016 and 2017, which were never repaid. The Trustee did assert a preference claim under § 547 in the *original* Complaint to recover interest payments made on those loans, 1-ER-246-47, 261-62 ¶¶143-148, 257-269 (Count 8), but the Trustee abandoned that claim after the Bankruptcy Court dismissed it with leave to amend. 5-ER-2388 (fn. 7). The Trustee has therefore waived any right to appeal that claim. *See Hogue v. Yordy*, 796 Fed.Appx. 955, 956 (9th Cir. 2020).

- 27 -

extinguishes a creditor's legal claim to property and replaces it with an equitable interest subject to a bankruptcy court's jurisdiction "to inquire into the validity of any alleged debt or obligation of the bankruptcy upon which a demand or a claim against the estate is based." Br. 33 (quoting *Katchen v. Landy*, 382 U.S. 323, 329 (1966)). That contention fails because it improperly conflates the bankruptcy court's *jurisdiction* to adjudicate the validity of a creditor's claim with the separate question of whether a bankruptcy court can, *on the merits*, avoid an extraterritorial transaction under § 548. *Morrison*, 561 U.S. at 254 (holding extraterritoriality is a "merits question" about "conduct [the statute] prohibits," not a jurisdictional question). It also improperly calls for a bankruptcy court to substitute general notions of equity for the requirements of the Bankruptcy Code.

The UL Defendants do not dispute that the Bankruptcy Court has jurisdiction to adjudicate whether their claims against the estate were valid. If, for example, the Trustee had sought to avoid an obligation as fraudulent under Singapore law, a claimant who filed a proof of claim waived any subject matter or personal jurisdiction objection to the court assessing the validity of the claim on account of that obligation under Singapore law. *See, e.g.*, *In re CIL Ltd.*, 582 B.R. 46, 103 (Bankr. S.D.N.Y. 2018) (dismissing avoidance claims under §§ 547 and 548 on extraterritoriality grounds but allowing trustee to assert fraudulent transfer claims under foreign statutes). The Trustee, however, chose to rely solely on the Bankruptcy Code, so the question before the Court is not whether the Bankruptcy Court had jurisdiction over the claims, but whether § 548 applies to extraterritorial transactions. For the reasons discussed in Section I, it does not.

The Trustee incorrectly argues that a bankruptcy "court's authority over the alleged conduct of the parties before it according to the distinct principles of equity" renders the *Morrison* "focus" test and the "presumption against extraterritoriality irrelevant." Br. 32-33. "[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised *within the confines of the Bankruptcy Code*."

1   *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) (emphasis added).

2   Because § 548 applies only to domestic transfers and obligations, a bankruptcy

3   court cannot rely on either § 548 or its own sense of "equity" to avoid

4   extraterritorial transactions, regardless of whether the defendant filed a proof of

5   claim. Were the rule otherwise, bankruptcy courts could ignore limitations in the

6   Bankruptcy Code as merely advisory, on the theory that a bankruptcy judge's

7   unmoored equitable powers could supplement or supplant the laws enacted by

8   Congress.

9        None of the cases cited by the Trustee address the relevant question—

10  extraterritoriality—nor do they grant a bankruptcy court the authority, in the guise

11  of "equity," to expand the substantive scope of the Bankruptcy Code. Br. 32-33.

12  These cases hold that a party who submits a proof of claim waives certain

13  procedural rights, such as a right to a jury trial presided over by an Article III judge.

14  *Katchen v. Landy*, 382 U.S. 323, 336 (1966); *Langenkamp v. Culp*, 498 U.S. 42, 45

15  (1990); *Stern v. Marshall*, 564 U.S. 462, 496 (2011) (quoting *Katchen*, 382 U.S. at

16  497). The cases do not, however, stand for the proposition that conduct unregulated

17  by the Bankruptcy Code—such as a foreign debtor's allegedly fraudulent transfers

18  from a foreign bank account—becomes conduct regulated by the Code when a

19  creditor submits to the bankruptcy court's jurisdiction by submitting a proof of

20  claim. The grant of jurisdiction and equitable powers to bankruptcy courts is not a

21  "roving commission to do equity" without regard to the substantive limits of the

22  Bankruptcy Code. *In re Saxman*, 325 F.3d 1168, 1175 (9th Cir. 2003) (internal

23  quotation omitted).

24        As the Bankruptcy Court correctly ruled, submitting to jurisdiction by filing a

25  proof of claim does not expand the scope of substantive statutes because "a court's

26  jurisdiction to adjudicate a matter is separate from whether a statute regulates

27  extraterritorial conduct." 35-ER-10382 (citing *RJR Nabisco*, 579 U.S. at 326). "[T]o

28  ask what conduct a statute reaches is a merits question, whereas subject-matter

- 29 -

jurisdiction refers to a court's power to hear a case, which is a separate issue from whether the allegations entitle the plaintiff to relief." 35-ER-10382 (citing *Morrison*, 561 U.S. at 254).[8] Even where a US court has unquestionable jurisdiction to remedy a foreign injury, "the relevant background principle is the presumption against extraterritoriality" that favors application of foreign law over US statutes. *RJR Nabisco*, 579 U.S. at 351.

The Trustee argues the Bankruptcy Court's application of *Morrison* is wrong because filing a proof of claim invokes a bankruptcy court's "equitable jurisdiction," not its "subject-matter jurisdiction." Br. 35-36. The Trustee makes a false distinction. To say that a creditor submits to a bankruptcy court's "equitable jurisdiction" is shorthand for saying he submits to personal jurisdiction on a claim within the subject-matter jurisdiction of the court. *In re Ass'n of Volleyball Pros.*, 256 B.R. 313, 316 (Bankr. C.D. Cal. 2000) ("By filing a proof of claim, the creditor submits itself to the equitable jurisdiction of the bankruptcy court. ... Thus a proof of claim confers on the bankruptcy court both personal jurisdiction over the claimant and subject matter jurisdiction over the claim."); *Katchen*, 382 U.S. at 329-30 (holding a proof of claim establishes the Court's "jurisdiction to adjudicate controversies"). The fact that a court has jurisdiction to resolve a dispute over the application of § 548 does not relieve the Trustee from pleading and proving that the conduct that is the "focus" of that statute occurred in the United States. *Morrison*, 561 U.S. at 266. The Supreme Court has never "endorse[d], even in dictum, the view that equitable considerations permit a bankruptcy court to contravene express

---

[8] In *In re Interbulk*, the court rejected an argument that it lacked *subject matter jurisdiction* to avoid a transaction because submitting a proof of claim submits a creditor "to the equitable jurisdiction of this court." *In re Interbulk, Ltd.*, 240 B.R. 195, 199 (Bankr. S.D.N.Y. 1999). Because the UL Defendants do not contest subject matter jurisdiction and because *Interbulk*, contrary to *Morrison's* teachings, treats extraterritoriality as a jurisdictional issue, rather than a merits one, *Interbulk* does not assist the Trustee. *Morrison*, 561 U.S. at 254.

1    provisions of the Code." *Law v. Siegel*, 571 U.S. 415, 426 (2014); *see also Norwest*,

2    485 U.S. at 206.

3         The Trustee's reliance on cases referencing a bankruptcy court's "plenary

4    power" over certain types of matters within its subject matter jurisdiction is also

5    unavailing. Br. 33 (citing *Marshall v. Marshall*, 547 U.S. 293, 303 (2006); *N.*

6    *Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 55 (1982) *Ex parte*

7    *Christy*, 44 U.S. 292, 327 (1845); *Pepper v. Litton*, 308 U.S. 295, 305 (1939); *U.S.*

8    *Fid. & Guar. Co. v. Bray*, 225 U.S. 205, 217 (1912)). When a bankruptcy court has

9    "plenary power," that means it is vested with all of the "powers of a court of equity,

10   law, and admiralty," *N. Pipeline Const.*, 458 U.S. at 55. The powers of such courts

11   do not include the power to rewrite legislation. A bankruptcy court can no more

12   apply § 548 to extraterritorial transactions than a district court could apply the U.S.

13   Copyright Act to a defendant subject to its jurisdiction who committed copyright

14   infringement abroad. *See Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d

15   1088, 1092 (9th Cir. 1994). "A bankruptcy court's equitable powers 'must and can

16   only be exercised within the confines of the Bankruptcy Code.'" *Willms v.*

17   *Sanderson*, 723 F.3d 1094, 1103 (9th Cir. 2013) (quoting *Norwest Bank*

18   *Worthington*, 485 U.S. at 197).

19        *In re Simon*, 153 F.3d 991 (9th Cir. 1998), on which the Trustee relies, is

20   readily distinguishable. There, the debtor listed a $24 million loan and guarantee on

21   his bankruptcy schedules ("Loan A"). *Id.* at 994. A creditor filed a proof of claim

22   for $37 million on a separate loan to the debtor ("Loan B"). *Id.* During the

23   bankruptcy process, the creditor did not use any of the procedural mechanisms

24   available to it to prevent the bankruptcy court from discharging Loan A, such as

25   asking the bankruptcy court to abstain under § 305 pending possible foreign

26   proceedings, asking it to lift the automatic stay of collection proceedings under

27   § 362, or filing an objection to the discharge under § 727(c). *Id.* at 997. The Court

28   held that, because filing a proof of claim on Loan B bound the creditor to the entire

- 31 -

procedural scheme for claims administration, the creditor could be enjoined pursuant to a § 524 discharge order from attempting to enforce Loan A in a foreign court after the claims administration process had been completed. *Id.* In doing so, the Court applied the pre-*Morrison* rule that "the presumption against extraterritoriality is not applicable when the regulated conduct is intended to, and results in, substantial effects within the United States." *Id.* at 995 (internal quotation omitted). *Morrison* later expressly rejected this "effects" test. *Morrison*, 561 U.S. at 259-61. And unlike the creditor in *Simon*, the UL Defendants who filed proofs of claims are not asking the Court to permit them to pick and choose which parts of the Bankruptcy Code apply to them.

This reading of *Simon*—that a creditor who files a claim submits to the bankruptcy court's jurisdiction for the purposes of determining allowance of its claims but does not submit himself to a bankruptcy court applying vague "equitable" principles in lieu of the substantive provisions of the Code—harmonizes with *Morrison*. When a creditor submits itself to the claims administration process by filing a proof of claim under § 501, binding the creditor to other aspects of that procedure, such as a § 524 discharge order, results in a domestic application of the statute. *See Stern*, 564 U.S. at 496 ("[H]e who invokes the aid of the bankruptcy court … must abide the consequences of that *procedure*.") (emphasis added; internal quotation omitted).

*Simon*, however, does not hold that the filing of a proof of claim unshackles bankruptcy courts from the substantive constraints placed upon them in the Code— such as that § 548 applies only to domestic transactions—nor does it leave the bankruptcy court free to apply ill-defined notions of "equity" to adjust the parties' rights. That approach contradicts *Morrison's* instruction that only clear statutory language—not a court's policy preferences—can overcome the presumption against

1
2
3
4

extraterritoriality. *Morrison*, 561 U.S. at 259.[9] It also contradicts the Supreme

Court's instruction that bankruptcy courts should adjust the parties' rights in

accordance with the statute and not "based on whatever considerations they [the

bankruptcy courts] deem appropriate." *Law*, 571 U.S. at 423.[10]

5
6
7
8
9
10
11
12
13
14

      Moreover, the Trustee's characterization of *Simon* relies on a misleading use

of ellipses. The Trustee quotes *Simon* as holding that "because Hong Kong-

Shanghai fully participated in the Simon bankruptcy, thus surrendering to United

States jurisdiction … the presumption of extraterritorial effect of a statute does not

apply." Br. 34. But *Simon* does not say this. It says "[b]ecause allowing a

participating creditor to disregard bankruptcy court orders would have 'substantial

effects within the United States,' *see Laker Airways*, 731 F.2d at 925, the

presumption against extraterritorial effect of a statute does not apply." *Simon*, 153

F.3d at 997 (quoting *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731

F.2d 909, 997 (D.C. Cir. 1984)).

15
16
17
18
19
20
21
22

      The Trustee's reliance on this language is doubly-flawed. First, the Trustee

does not allege in his avoidance and recovery claims that any of the UL Defendants

have disregarded a court order. Thus, the domestic interest of a bankruptcy court in

ensuring the integrity of its own proceedings is not implicated here. Second, this

language in *Simon* relies on the "effects test" expressly overruled in *Morrison*.

*Morrison*, 561 U.S. at 259-61. Under *Morrison*, effects in the United States are

insufficient to overcome the presumption of extraterritoriality, unless "the 'focus' of

23
24

[9] Even if *Simon* had held that policy considerations, rather than the "focus" test, determine whether a case involves a domestic application of the statute, this Court is bound to follow *Morrison*, not *Simon*. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).

25
26
27
28

[10] For the same reason, the dictum in *Diaz-Barba* that "when a party affirmatively invokes the jurisdiction of the bankruptcy court, the presumption against extraterritoriality does not apply to that party," finds no support in *Simon*. *Diaz-Barba v. Kismet Acquisition, LLC*, No. 08:CV-1446 BTM (BLM), 2010 WL 2079738, at *7 (S.D. Cal. May 20, 2010). *Diaz-Barba* is also unpersuasive because it applies the "effects" test expressly overruled in *Morrison*. *Id.*; *Morrison*, 561 U.S. at 259-61.

APPELLEES' ANSWERING BRIEF

congressional concern" in the statute at issue occurred in the United States. Because the filing of proof of claims is not the focus of § 548, *Simon* does not assist the Trustee.

As a last resort, the Trustee argues that an objection to extraterritoriality can be waived, citing a case in which criminal defendants waived their right to appeal by pleading guilty without reserving the right to appeal, *United States v. Miranda*, 780 F.3d 1185, 1186 (D.C. Cir. 2015), and a case in which a criminal defendant waived an argument by including it for the first time in a reply brief, *United States v. Wolfenbarger*, No. 16-CR-00519-LHK-1, 2020 WL 2614958, at *5 (N.D. Cal. May 22, 2020). Br. 36. In addition to being far afield from the topic at hand, these cases do not help the Trustee because the UL Defendants did not waive their extraterritoriality arguments; they raised and prevailed on them—twice. 1-ER-286; 7-ER-3446.

## III.   Count 6 Fails to State a Recharacterization Claim.

The Bankruptcy Court held the Trustee failed to state a claim for recharacterization under § 105(a) because that section only grants bankruptcy courts "the power to exercise equity in carrying out *provisions* of the Bankruptcy Code," rather than a roving authority "to do the right thing." 4-ER-2162. Consistent with the Bankruptcy Court's judgment, the Ninth Circuit has held that when considering "a request to disallow [a creditor's] claim under 11 U.S.C. § 502, … courts may not rely on § 105(a) and federal common law rules of their own creation to determine whether recharacterization is warranted." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1148-49 (9th Cir. 2013) (internal quotation omitted).

While a bankruptcy court may recharacterize an agreement under the "state law" governing the agreement (*id.*), this loan agreement is governed by Hong Kong law, not U.S. law. 4-ER-2162; 17-ER-4924 Ex. 12-B, § 16. But the Trustee did not plead a claim under Hong Kong law, and cites no legal authority to support that applicable Hong Kong law (*id.*) permits recharacterization. Accordingly the Trustee

- 34 -

1   has waived any such claim and the Bankruptcy Court properly determined that

2   § 105(a) does not apply extraterritorially to create such a claim. 4-ER-2161-62; 35-

3   ER-10383-85. Instead, the Trustee rests on his contention that the Bankruptcy Court

4   had free rein to "recharacterize the Third Investment as an equity interest and

5   disallow the claim under §§ 105(a) and 502." Br. 37. Because the Trustee's

6   argument is foreclosed by binding Ninth Circuit authority, the Bankruptcy Court

7   correctly rejected it. *In re Fitness Holdings*, 714 F.3d at 1149.

8   **IV.   The Bankruptcy Court Correctly Dismissed Counts 8 and 9.**

9        In Counts 1 and 2, the Trustee sought to recover money Minsheng paid to UL

10   and Glove to purchase the planes from them. 5-ER-2373-79. Because Zetta PTE has

11   no standing to recover a transfer of *Minsheng's* property, the Trustee sought in

12   Counts 8 and 9 to recharacterize certain leases between Zetta PTE and Minsheng as

13   security instruments in which Zetta PTE became owner of the planes (rather than

14   lessee) and Minsheng became owner of a security interest in the planes (rather than

15   the planes themselves). 5-ER-2385-87. The Trustee contends that recharacterizing

16   the Minsheng leases into security instruments results in Minsheng's money

17   becoming Zetta PTE's money. *See, e.g.,* 2-ER-603-04. The only purpose of Counts

18   8 and 9 is to transform Minsheng property into Zetta PTE property that Zetta PTE

19   could attempt to recover under Counts 1 and 2. *See id.*

20        Because granting the relief sought in Counts 1 and 2 would involve an

21   extraterritorial application of the Bankruptcy Code, the Bankruptcy Court also

22   dismissed Counts 8 and 9 as necessarily seeking an extraterritorial application of the

23   Code. 35-ER-10386. For the reasons discussed in Sections I and II, *supra*, the

24   Bankruptcy Court did not err in this determination.

25        As an independent ground for dismissal, the Bankruptcy Court dismissed

26   Counts 8 and 9 because they were outside the scope of the leave to amend granted in

27   the order dismissing the original Complaint. The Trustee never sought broader leave

28   in the seven months that elapsed between the filing of the original Complaint and

- 35 -

the Amended Complaint, and the Trustee never filed a motion for leave to amend, even after the UL Defendants' motion to dismiss the Amended Complaint flagged the deficiency. 35-ER-10387-88. The Trustee cavalierly disregarded the scope of the Bankruptcy Court's order granting leave to amend the original Complaint, and the Bankruptcy Court did not abuse its discretion in refusing to reward such an approach. *See Parker v. Joe Lujan Enterprises, Inc.*, 848 F.2d 118, 121 (9th Cir. 1988) (affirming denial of motion for leave to amend brought in violation of local rules).[11]

## **CONCLUSION**

The UL Defendants and Li Qi respectfully ask the Court to affirm the Bankruptcy Court's well-reasoned decision and judgment below.

Dated:  March 28, 2022

ARNOLD & PORTER KAYE SCHOLER LLP

By:  */s/ Brian K. Condon*

Michael L. Bernstein
Reeves Anderson
Brian K. Condon
Oscar Ramallo

Attorneys for Defendants-Appellees
Universal Leader Investment Limited, Glove Assets Investment Limited, Truly Great Global Limited, and Li Qi

---

[11] The Trustee also complains that the Bankruptcy Court should not have struck Counts 8 and 9. Br. 38. The Bankruptcy Court, however, did not strike them. It expressly held "that it is more appropriate to dismiss, rather than to strike, Counts 8 and 9." 35-ER-10387. The Trustee's mistaken reading of the Bankruptcy Court's decision provides no ground for reversal of its well-reasoned judgment.

- 36 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains **11,926** words.

2.  This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

By:  _____ */s/ Brian K. Condon* _____
                Brian K. Condon

APPELLEES' ANSWERING BRIEF