**CASE NO. 2:21-cv-7572-JAK**

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

In re: Zetta Jet USA, Inc., et al.

*Debtors.*

JONATHAN D. KING, solely in his capacity as Chapter 7
Trustee of Zetta Jet USA, Inc and Zetta Jet PTE, Ltd.,

*Appellant,*

vs.

Li Qi, Universal Leader Investment Limited, Glove Assets Investment Limited, and
Truly Great Global Limited,

*Appellees.*

Appeal from the United States Bankruptcy Court, Central District of California
Bankruptcy Case No. 2:17-bk-21386-SK
Adversary Case No. 2:19-ap-01383-SK

**APPELLANT'S REPLY BRIEF**

DAVID M. RILEY (SBN 292087)
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Telephone:  (310) 595-3412
Facsimile:   (310) 595-3312
Email:  david.riley@us.dlapiper.com

*Counsel for Appellant*

JOHN K. LYONS (Pro Hac Vice)
JEFFREY S. TOROSIAN (Pro Hac Vice)
JOSEPH A. ROSELIUS (Pro Hac Vice)
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0087
Telephone:  (312) 368-4000
Facsimile:  (312) 236-7516
Email: john.lyons@us.dlapiper.com
        jeffrey.torosian@us.dlapiper.com
        joseph.roselius@us.dlapiper.com

*Counsel for Appellant*

# **<u>TABLE OF CONTENTS</u>**

**Page(s)**

I.   The context of the Bankruptcy Code demonstrates that § 548 applies
     extraterritorially ................................................................................................3

II.  Even if § 548 does not apply extraterritorially, the Trustee can still avoid and
     recover the domestic transfers alleged in the FAC...........................................7

   A.   The initial transfer that depleted the Debtors' property was domestic. .......7

   B.   The focus of the "obligations incurred" language is whether the obligation
        was incurred in the U.S., not the subsequent performance of those
        obligations. ..............................................................................................10

   C.   Under *Picard*, the Trustee may avoid and recover transfers made on
        account of fraudulently incurred obligations. ............................................13

III. The filing of a proof of claim renders disputes related to the debtor-creditor
     relationship *in rem* and therefore the presumption against extraterritoriality
     is inapplicable ................................................................................................14

IV.  The FAC pleads a plausible recharacterization claim in Count VI...............18

V.   Appellees cite no relevant authority to support a basis for denial of leave to
     amend for counts of recharacterization ........................................................18

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ampal-Am. Israel Corp.*,
   562 B.R. 601 (Bankr. S.D.N.Y. 2017)................................................................6

*In re Arcapita Bank B.S.C.(c)*,
   575 B.R. 229 (Bankr. S.D.N.Y. 2017)........................................................7, 8, 9

*Banco Safra Cayman Islands Branch v. Samarco Mineracão*,
   2019 WL 2514056 (S.D.N.Y. 2019)...............................................................9

*In re Bankruptcy Estate of Midland Euro Exchange Inc.*,
   347 B.R. 708 (Bankr. C.D. Cal. 2006) ...........................................................6

*Begier v. IRS*,
   496 U.S. 53 (1990).......................................................................3, 4, 5, 6, 7

*In re Bonham*,
   229 F.3d 750 (9th Cir. 2000) ......................................................................16

*In re CIL Ltd.*,
   582 B.R. 46 (Bankr. S.D.N.Y. 2018)............................................................6

*In re Clark*,
   692 Fed. App'x 946 (9th Cir. 2017) ...........................................................16

*In re Davies*,
   2012 WL 370689 (B.A.P. 9th Cir. 2012) ....................................................20

*In re Fitness Holdings Int'l, Inc.*
   714 F.3d 1141 (9th Cir. 2013) ....................................................................18

*In re French*,
   440 F.3d 145 (4th Cir. 2006) ...............................................................1, 3, 4

*In re Int'l Mfg. Grp, Inc.*,
   2016 WL 7163588 (Bankr. E.D. Cal. Dec. 6, 2016) .........................................14

*Katchen v. Landy*,
   382 U.S. 323 (1966)................................................................................15, 17

i

*Langenkamp v. C.A. Culp*,
  498 U.S. 42 (1990)...........................................................................................14

*Law v. Siegel*,
  571 U.S. 415 (2014)......................................................................................4, 16

*Norwest Bank Worthington v Ahlers*,
  485 U.S. 197 (1988).................................................................................15, 16

*Pelletier v. Fed. Home Loan Bank of San Francisco*,
  968 F.2d 865 (9th Cir. 1992) .........................................................................10

*In re Picard*,
  917 F.3d 85 (2d Cir. 2019) ...........................................................7, 8, 13, 14

*Rajala v. Gardner*,
  709 F.3d 1031 (10th Cir. 2013) ..................................................................5, 6

*Rubin v. Manufacturers Hanover*,
  661 F.2d 979 (2d Cir. 1981) .....................................................................11, 12

*In re Saxman*,
  325 F.3d 1168 (9th Cir. 2003) .................................................................15, 16

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  513 B.R. 222 (S.D.N.Y. 2014) ........................................................................6

*In re Sherwood Invs. Overseas Ltd.*,
  2015 WL 4486470 (Bankr. M.D. Fla. July 22, 2015) ....................................6

*In re Sherwood Invs. Overseas Ltd.*,
  2016 WL 5718450 (M.D. Fla. Sept. 30, 2016)................................................6

*In re Simon*,
  153 F.3d 991 (9th Cir. 1998) ..............................................................14, 17, 18

*In re Walldesign, Inc.*,
  872 F.3d 954 (9th Cir. 2017) ...........................................................................7

*WesternGeco LLC v. Ion Geophysical Corp.*,
  138 S. Ct. 2129 (2018)......................................................................................6

ii

**Statutes**

11 U.S.C. §§ 502, 704 ........................................................................................15

11 U.S.C. § 546 ..................................................................................................16

11 U.S.C. § 547(b) ...............................................................................................4

18 U.S.C. § 1956(a)(2)(A) ................................................................................10

18 U.S.C. § 2314 ...............................................................................................10

**Other Authorities**

Fed. R. Bankr. P. 8015(a)(5) .............................................................................22

Fed. R. Bankr. P. 8015(a)(6) .............................................................................22

Fed. R. Bankr. P. 8015(a)(7)(B)(i) ....................................................................22

Fed. R. Bankr. P. 8015(g) .................................................................................22

EAST/189918411

## <u>SUMMARY OF THE ARGUMENT</u>[1]

In their Answering Brief, Appellees raise a number of arguments in support of affirming the 8/17 Order.  None of them succeed.

First, Appellees argue that the text of § 548 does not refer to extraterritorial scope.  But, as recognized in *In re French*, 440 F.3d 145, 151-52 (4th Cir. 2006), Supreme Court precedent imports the extraterritorial scope of property of the estate under § 541 into the definition of "an interest of the debtor in property" under § 548. Consequently, because "an interest of the debtor in property" under § 548, as informed by § 541, covers property outside the U.S., a trustee can avoid and recover transfers made, or obligations incurred with respect to, such property.

Second, Appellees argue that the transfers at issue are extraterritorial because they did not involve domestic conduct.  This is incorrect.  The transfers, which required both transmittal and receipt of funds to be effective, were made to Appellees' designated account at HSBC NY, at which time Appellees exercised dominion and control over the funds.  The 2016 loan proceeds — in which the Debtors obtained "an interest of the debtor in property" at closing — were transferred from IATS' bank account in New York and received at Appellees' account at HSBC NY.  Thus, both the transmittal and receipt of the proceeds constituted domestic conduct within the focus of § 548. The Bankruptcy Court's conclusion that the transfers never touched the U.S. merely because HSBC NY was a U.S. correspondent bank account was error because it relied on pre-*Morrison* or otherwise inapposite caselaw.

Third, Appellees assert that the "obligations incurred" prong of § 548 focused on depletion of the estate through the location of subsequent payments made on account of the obligations, rather than the incurrence of the obligations themselves.

---

[1]     Capitalized terms used herein but not defined have the same definition attributed to them in the *Appellant's Opening Brief* [Docket No. 30] (the "<u>Opening Brief</u>").  All emphasis is added.

1

But § 548 focuses on incurrence — meaning when and where the debtor became obligated to repay the loan — not on subsequent payment or performance of the incurred obligations.  Because the obligations were incurred in the U.S., the fraudulent conduct that is focus of § 548 occurred in the U.S.  The Trustee thus can not only avoid the obligations themselves, but also avoid and recover subsequent transfers to remedy the initial fraudulent conduct — the fraudulent incurrence of obligations — irrespective of the location of the transferees.

Fourth, Appellees argue that their filing of a proof of claim does not affect the extraterritorial analysis.  By filing a proof of claim, however, Appellees invoked the *in rem* jurisdiction of the Bankruptcy Court to adjust the debtor-creditor relationship under Supreme Court precedent, which includes the historical equitable power to require Appellees to return otherwise extraterritorial fraudulent transfers through the ancillary provisions of §§ 548 and 550.

Fifth, the Bankruptcy Court erred by dismissing the recharacterization claims solely because it incorrectly held that they were brought under § 105(a), rather than § 502, and refused to give the Trustee leave to amend to address any technical deficiency.  Neither Appellees nor the Bankruptcy Court provide any persuasive authority to support this decision.

EAST/189918411

**ARGUMENT**

**I.**    **The context of the Bankruptcy Code demonstrates that § 548 applies extraterritorially.**

Appellees' argument against the extraterritorial reach of § 548 hinges upon one key assumption: that the § 541 definition of "property of the estate" — that Appellees concede applies extraterritorially — cannot be used to define "an interest of the debtor in property" for purposes of § 548 because § 541(a)(1) is expressly limited to property held by the estate "as of commencement of the case."  Ergo, because the Debtors' funds in Singapore were transferred to Appellees before commencement of the case, § 541(a)(1) cannot be used to define "an interest of the debtor in property" for purposes of § 548.

The Fourth Circuit in *In re French*, 440 F.3d at 151-52, relying on the Supreme Court's decision in *Begier v. IRS*, 496 U.S. 53, 58 (1990), squarely held otherwise.  The Fourth Circuit noted that *Begier* plainly allows a trustee to avoid any transfer of property that *would have been* § 541 "property of the estate" through incorporation of § 541 into the definition of "an interest of the debtor in property" in the avoidance statutes.  *Id.*

In *Begier*, the Supreme Court analyzed whether a prepetition payment of a trust fund tax to the IRS constituted an avoidable preference.  The Court explained that the purpose of the Code's avoidance provisions is to preserve property includable within the bankruptcy estate, specifically property that would have been part of the estate had it not been transferred prepetition.  *Id.* at 58.  The Court was guided by § 541, which delineates "property of the estate," and serves as the "postpetition analog" to "property of the debtor" under the avoidance statutes.  Accordingly, *Begier* imported the language of § 541(a)(1) into § 547 to determine whether the prepetition transfer constituted a transfer of "property of a debtor" under the avoidance statutes.

*Begier* applies with equal force to § 548, which uses identical language to

§ 547.  By incorporating § 541, which has extraterritorial reach by defining "property of the estate" to be "wherever located," § 548 similarly applies extraterritorially to avoid a *prepetition* transfer of *foreign* property that would otherwise be includable in a debtor's *postpetition* estate. "Through this incorporation, Congress made manifest its intent that § 548 apply to all property that, absent a prepetition transfer, would have been property of the estate, wherever that property is located." *See French*, 440 F.3d at 152.

Sections 541(a)(1), 547 and 548 all use the same terminology — "interest of the debtor in property." *See* § 541(a)(1) ("interests of the debtor in property"); 11 U.S.C. § 547(b) ("interest of the debtor in property"); § 548(a)(1) ("interest of the debtor in property").  The "normal rule of statutory construction" is "that words repeated in different parts of the same statute generally have the same meaning." *Law v. Siegel*, 571 U.S. 415, 422 (2014). This compels the conclusion that the § 541 meaning of an "interest of the debtor in property" — which means property "wherever located" — should have the same meaning as that terminology in § 548. Indeed, *Begier* expressly noted that Congress's 1984 amendments to the Bankruptcy Code, which changed "property of a debtor" to "an interest of the debtor in property" in § 547 to match the terminology in § 541, further confirmed its view that § 541 should guide the meaning of this language in § 547. *See Begier*, 496 U.S. at 59, n. 3.

The Bankruptcy Court recognized that the focus of §§ 548 and 550 is the transfer or obligation that "depletes property that *would have become* property of the estate" in its order dismissing the First Amended Complaint ("FAC") entered on August 17, 2021 (the "8/17 Order").  (35-ER-10375.) (citations omitted.)  Despite that, the Bankruptcy Court inconsistently rejected the proposition that "the Court [can] consider 541(a)(1) to define property that [the trustee] can avoid under § 548," which was one of its grounds for rejecting *French*.  (4-ER-2142.)

Alternatively, Appellees assert that incorporating fraudulently transferred

property into § 541(a)(1)'s definition of property of the estate would render meaningless subsection (a)(3), which provides that property recovered under § 550 (among others) only becomes estate property upon recovery. *Appellees' Answering Brief* [Dkt. 43] ("Answering Brief") at 22.

Appellees mischaracterize the Trustee's position. The Trustee is not arguing that fraudulently transferred property in the hands of a recipient is property of the estate under § 541 *prior* to avoidance and recovery. Rather, the Trustee is applying *Begier*, which held that § 541 — § 548's "postpetition analog" — should be used as "guidance" to identify the "interest of the debtor in property" under the avoidance statutes that would have been includable in the *postpetition* estate absent the *prepetition* transfer. Thus, § 541(a)(3) is entirely consistent with the Trustee's position and *Begier* — that property transferred prepetition only becomes § 541 property of the estate once it is avoided and recovered *postpetition*.

Moreover, Appellees have no reasoned basis to exclude "wherever located" from § 541's guidance on defining "an interest of the debtor in property." If § 541 is to be used guidance for § 548, then it is inappropriate to selectively exclude "wherever located." To do so would be contrary to the central tenet of *Begier* that an "interest of the debtor in property" — the same terminology used in § 541(a)(1) — is "best understood as that property that *would have been part of the estate* had it not been transferred." *Begier*, 496 U.S. at 58. Because funds in the Debtors' bank account in Singapore *would have been* property of the estate under § 541(a)(1) had the funds not been transferred to Appellees, § 548 must be interpreted, in the context of the "postpetition analog" § 541, to cover this property.

None of Appellees' cases support their novel argument that would insulate transfers of foreign property from the reach of the avoidance statutes. Two of the cases — *In re Colonial Realty* Co., 980 F.2d 125 (2d Cir. 1992), and *Rajala v. Gardner*, 709 F.3d 1031, 1039 (10th Cir. 2013) — did not involve the avoidance statutes at all, much less what constitutes an "interest of the debtor in property."

Rather, they held that the *postpetition* automatic stay under § 362 did not apply to property transferred *prepetition* until *postpetition* avoidance and recovery. *See Colonial Realty*, 980 F.2d at 130-31; *Rajala*, 709 F.3d at 1039.

Moreover, Appellees' only Ninth Circuit authority — *In re Bankruptcy Estate of Midland Euro Exchange Inc.*, 347 B.R. 708 (Bankr. C.D. Cal. 2006) — did not even mention *Begier*, much less explain why its holding did not control, and relied upon the inapposite *Colonial* line of automatic stay cases. The two *Sherwood* opinions were similarly infirm. *See In re Sherwood Invs. Overseas Ltd.*, 2015 WL 4486470 (Bankr. M.D. Fla. July 22, 2015) (failing to cite or analyze *Begier*); *In re Sherwood Invs. Overseas Ltd.*, 2016 WL 5718450 (M.D. Fla. Sept. 30, 2016) (same). *In re Maxwell Commc'n Corp. plc*, 186 B.R. 807 (S.D.N.Y. 1995) was decided before *Begier*. Similarly, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 228 (S.D.N.Y. 2014) did not analyze the holding in *Begier* and relied heavily on *Colonial* and *Midland*. Neither *In re CIL Ltd.*, 582 B.R. 46 (Bankr. S.D.N.Y. 2018) nor *In re Ampal-Am. Israel Corp.*, 562 B.R. 601 (Bankr. S.D.N.Y. 2017) provided any basis as to why the use of the § 541 "postpetition analog" as required by *Begier* should exclude "wherever located" from informing "interest of the debtor in property" for purposes of § 548.

Finally, contrary to Appellees, *Morrison*, which had nothing to with § 548 and its "postpetition analog" § 541, does not override or undermine *Begier*. *Begier* is entirely consistent with *Morrison* and subsequent Supreme Court precedent which states that context may be dispositive. *See* Opening Brief at 17. Federal statutes should not be viewed in a "vacuum" and "[i]f the statutory provision at issue works in tandem with other provisions, it must be assessed in concert with those provisions." *WesternGeco LLC v. Ion Geophysical Corp.,* 138 S. Ct. 2129, 2137 (2018). *Begier* did just that when, consistent with normal rules of statutory construction regarding identical terminology, it viewed §§ 541 and 547 as working in tandem to promote the "central policy of the Bankruptcy Code" to further

1 "equality of distribution among creditors" of equal priority. *Begier*, 496 U.S. at 58.

2 In contrast, Appellees (and the Bankruptcy Court) view § 548 in a "vacuum" and

3 ignore normal rules of statutory construction.

4     For these reasons, the Court should reverse the Bankruptcy Court's judgment

5 and hold that § 548 applies extraterritorially when viewed in the context of the

6 "postpetition analog" of § 541, as required by *Begier*.

7 **II.**   **Even if § 548 does not apply extraterritorially, the Trustee can still avoid**

8      **and recover the domestic transfers alleged in the FAC.**

9     **A. The initial transfer that depleted the Debtors' property was domestic.**

10     Appellees and the Bankruptcy Court cherry-picked language from *In re*

11 *Picard*, 917 F.3d 85, 99 n.9 (2d Cir. 2019) to suggest that only a debtor's transfer,

12 and not the transferee's receipt, of property is relevant conduct under § 548.

13 Answering Brief at 16. They then contend that there was no domestic conduct

14 alleged in the FAC because the Debtors transferred funds from Singapore to New

15 York. This interpretation hinges on an incorrect interpretation of "transfer made"

16 under § 548 to consist solely of transmittal, but not receipt, of funds. *See* Answering

17 Brief at 25-26.

18     An *effective* transfer requires both sides of the coin: transmittal *and* receipt.

19 Section 548(a)(1) regulates transfers "*made*," not just transfers "initiated." Indeed,

20 it is the "receipt of the transferred funds in New York correspondent bank accounts"

21 that is "at the heart of this cause of action" for fraudulent transfer. *See In re Arcapita*

22 *Bank B.S.C.(c)*, 575 B.R. 229, 236 (Bankr. S.D.N.Y. 2017). That is also why the

23 Ninth Circuit defines a transferee under § 550(a) as a recipient that has "dominion

24 and control," meaning the right to put assets to its own purposes. *In re Walldesign,*

25 *Inc.*, 872 F.3d 954, 963 (9th Cir. 2017). Put otherwise, until a recipient has dominion

26 and control over property, the debtor has not "dispos[ed] of" or "part[ed] with" (*i.e.*,

27 "deplet[ed]") the property. *See* § 101(54).

28     *Picard* does not suggest otherwise. "Receipt" of the *initial* transfer was not

7

at issue in *Picard*, much less the "heart" of the claim.  Unlike here, *Picard* did not involve a transfer from a foreign transferor to a domestic transferee.  Rather, *Picard* addressed a subsequent transfer from a foreign transferor. The foreign *subsequent* transferee argued that § 550 did not apply because it received the funds outside the U.S.  *Picard* rejected the argument that "the appropriate 'transaction' to determine the extraterritoriality question is the subsequent transfer" and held that once the domestic nature of an initial transfer is established (*i.e.*, the initial transfer that depletes the estate), extraterritoriality did not apply to the receipt of a *subsequent* transfer by a foreign transferee under § 550(a)(2). *Picard*, 917 F.3d at 99 ("The only transfer § 548(a)(1)(A) is concerned with is the initial transfer, as this is the only transfer 'the debtor . . . made.'").  *Picard* thus never addressed, much less decided, the "receipt" side of the coin for an *initial* transfer.

*Arcapita* and *Picard* are thus reconcilable as the two sides of the transfer coin: *Picard* dealt with transmittal and *Arcapita* dealt with receipt.  Either side of the coin is enough to demonstrate domestic conduct sufficient to trigger regulation under § 548.  Indeed, if the Bankruptcy Court's ruling — limited solely to transmittal — is sustained, a debtor's fraudulent transfer of funds from a foreign bank account directly into an account *in the U.S.* could never be avoided under § 548.  Neither the Bankruptcy Court nor Appellees cited a single case that supports this draconian proposition, nor is there one.  Allowing such a novel and dangerous rule to stand would render the U.S. a safe haven for fraudulent transfers made by foreign debtors who then choose to take advantage of the U.S. bankruptcy process — clearly this is not the result Congress intended under the Bankruptcy Code.  U.S. financial institutions are not the clearinghouse for fraudsters to shield assets from recovery from creditors.

In any event, Appellees' argument (that only the transmittal side of the coin matters to whether a transfer is domestic) does not apply to the Debtors' interest in the $80 million loan proceeds advanced by Minsheng into the IATS escrow account

under the disguised financing 2016 Plane 6 and 7 Finance Leases, $55 million of was transferred to UL's account at HSBC NY. Those funds deposited at IATS' U.S. bank account, which was established so the parties could close the Minsheng Refinancing in the U.S., constituted an "interest of the debtor in property" located in the U.S. at closing and was not foreign property. *See* Opening Brief at 20 (citing cases). Thus, with respect to disbursement of the IATS funds, both sides of the transfer coin occurred in the U.S.: the Debtors initiated the fraudulent transfer of loan proceeds from the IATS account in New York when they released signature pages at closing in Oklahoma (the "transmittal" side of the coin) to Appellee UL's HSBC NY account (the "receipt" side of the coin).

Appellees next argue that the use of correspondent bank accounts is not enough to demonstrate domestic activity, citing *Maxwell* and *Banco Safra Cayman Islands Branch v. Samarco Mineracão*, 2019 WL2514056 (S.D.N.Y. 2019). Neither authority supports the Bankruptcy Court's holding, and it should be reversed.

First, *Maxwell* applied the wrong test — the "center of gravity" or "component events" test which, as *Arcapita* noted, undermines its precedential value. *See* Opening Brief at 23. In particular, *Maxwell* weighed factors that were irrelevant to discerning whether the transfers involved domestic conduct such as the foreign identity of the parties, governing law of the contracts, foreign location of business, and the source of funds that were subsequently transferred. Moreover, the use of a U.S. correspondent bank account, which was mentioned only in a footnote, was not at issue in that case. The debtor's and the examiner's sole challenge to extraterritoriality was that the funds later transferred to the defendants from the debtor's London bank account were derived from U.S. asset sale proceeds. This challenge was rejected by *Maxwell* because it was only one component, outweighed by the other components. Thus, the footnote in *Maxwell* is, at best, *dicta* and does not support the Bankruptcy Court's unprecedented ruling barring avoidance of a debtor's foreign sourced transfers to the U.S.

9

*Banca Safra* is also inapposite.  That case did not involve § 548.  Rather, it examined whether the plaintiff adequately alleged a domestic securities "transaction" under 10(b) of the Exchange Act, which required the plaintiff to demonstrate that irrevocable liability was incurred in the U.S. or that title transferred to the securities in the U.S.  Section 10(b) does not address "transfers," unlike § 548 and statutes regarding money laundering (18 U.S.C. § 1956(a)(2)(A)) and transportation of stolen goods (18 U.S.C. § 2314).

Appellees next argue that HSBC NY's receipt of the funds is not the conduct which the statute seeks to regulate because HSBC NY never had "dominion" over the funds, and so was not a "transferee" under § 550.  They are wrong.  HSBC NY, which was the account designated as the "payment location" by Appellees and was the Appellees' bank account which must be taken as true.  *See* Opening Brief at 7.  At a minimum, HSBC NY was the ultimate agent of UL and, thus, exercised dominion and control on behalf of UL.  *See* Opening Brief at 24 (*citing Arcapita*, 549 B.R. at 70, n.18 ("[Khaleeji [the U.S. correspondent branch] acted as Tadhammon [the foreign defendant transferee]'s agent when it received the funds, and thus, Khaleej's receipt of funds in New York can be imputed to Tadhammon").  Appellees do not address this holding, much less contest it.  Appellees are free to challenge the allegations of *when* Appellees obtained dominion and control over the funds, but that challenge is a factual dispute wholly inappropriate to resolve on a motion to dismiss, which assumes all facts in the complaint to be true and draws all reasonable inferences resolved in the Trustee's favor.  *Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 872 (9th Cir. 1992).

**B. The focus of the "obligations incurred" language is whether the obligation was incurred in the U.S., not the subsequent performance of those obligations.**

In its 8/17 Order, the Bankruptcy Court wrote the "obligations incurred" prong out of § 548.  The Bankruptcy Court found that the obligations incurred in

the U.S. were nevertheless foreign because they were "obligations to make transfers from Zetta PTE's and Minsheng's foreign bank accounts."  The Bankruptcy Court never addressed when and where the Debtors actually "incurred" those obligations under the 2015 and 2016 Finance Leases.  Rather, the Bankruptcy Court focused solely on from where the obligations were (supposedly) going to be paid. Because the subsequent transfers were in later made from foreign accounts, the Bankruptcy Court found that there was no domestic conduct.  *See* Answering Brief at 22.

Contrary to the Bankruptcy Court's view, the second prong of § 548, which is *disjunctive* from the first "transfers made" prong, regulates *the incurrence* of fraudulent obligations, and not the later performance or payment of the obligations. The "transfers made" prong regulates performance and payment.  By focusing only on payments, and not the incurrence of obligations, the Bankruptcy Court effectively wrote the second prong of § 548 out of the statute.

The Bankruptcy Court reached its conclusion by an erroneous interpretation of the Second Circuit's opinion in *Rubin v. Manufacturers Hanover*, 661 F.2d 979 (2d Cir. 1981).  The Bankruptcy Court cited *Rubin* in support of its holding that the second prong of § 548 focuses on obligations "that unfairly deplete the estate."

The proposition that a fraudulently incurred obligation must "deplete the estate" is accurate.  In the context of a fraudulently incurred obligation, the depletion of the estate occurs through the incurrence of a fraudulently inflated liability that reduces a debtor's net worth that is, the surplus (or deficit) of assets minus liabilities. If a liability is incurred in exchange for an asset that is less than the liability, the debtor's net worth is reduced.  *Rubin* made this clear when it held "[t[he court must then compare its estimate of the value thus received . . . with the magnitude of the obligation charged . . . .  If the value received . . . is found to be disproportionately small as compared to the obligation, then, to that extent, the trustee will have proved lack of fair consideration . . . ." *See Rubin*, 661 F.2d at 994.

However, the Bankruptcy Court made a critical, and dispositive, error when

11

it failed to consider fraudulently inflated liabilities as a basis for depletion. Instead, the Bankruptcy Court *only* considered *asset* depletion — "transfers" — as being depletive of the estate.   The FAC alleged hundreds of millions of dollars in fraudulently incurred obligations, which dramatically inflated the Debtors' liabilities and plunged them into even deeper insolvency.  Opening Brief at 25.  That was sufficient to state a claim under the second prong — that the obligations incurred depleted the estates.

Equally important, *Rubin* made it clear that the second prong covers obligations when incurred, not when performed.  In particular, *Rubin* held that an obligation is incurred when a loan is made, not when repaid or when a guarantor's contingency to payment is removed.  661 F.2d at 990 ("[W]e conclude that USN and UMO 'incurred' 'obligation(s)' when MIT loaned money . . . .").

Here, the FAC alleged that the Debtors incurred obligations *in the U.S.* when the disguised loans were closed, and funded, under the 2015 Plane 6 and 7 Finance Leases and the Minsheng Refinancing. Opening Brief at 25.

Based upon its failure to consider the depletive effect of fraudulently inflated liabilities, the Bankruptcy Court held the closing and funding of the disguised loans "did not deplete the estate of anything" and only considered the location of subsequent payments made to repay the obligations. (35-ER-10379.) ("Unfortunately for the Trustee, the obligations that he highlights as occurring in the U.S. [closing steps and delivery of planes, among others] . . . are not the focus of § 548 and did not deplete the estates . . . They were mere preliminary steps to the conduct that actually depleted the estate, which was the transfer of funds . . . .") (citations omitted).  This was error.  The allegations regarding the closing steps completed in the U.S. including the exchange of release of signatures pages, the funding of the loan, and delivery of aircraft indicate that the Debtors fraudulently incurred obligations in the U.S. at time the loans were closed and funded.  (35-ER-10377, 10379.)

If the Bankruptcy Court's ruling on this point is affirmed, no fraudulently incurred obligation could be avoided unless and until a later transfer is made on that obligation. That makes no sense as a matter of law or policy.  The Bankruptcy Court thus erred by dismissing these allegations and by holding that *only* a transfer of assets, and not incurrence of fraudulently inflated obligations, could deplete the estate.

Moreover, the Bankruptcy Court had no basis to determine — much less on a motion to dismiss — that Zetta PTE would pay obligations following closing from a bank account in Singapore *at the time of incurrence*.  Neither the Bankruptcy Court nor Appellees cited to any contractual obligation that would have required the Debtors to make payments from bank accounts in Singapore.  To the contrary, the only contractual payment obligation in the record required UL to be paid through transfers to its account at HSBC NY in U.S. dollars.  Opening Brief at 7.

Accordingly, the Bankruptcy Court's dismissal of the Trustee's § 548 claims predicated upon the "obligations incurred" prong should be reversed.

**C. Under *Picard*, the Trustee may avoid and recover transfers made on account of fraudulently incurred obligations.**

Appellees further misconstrue *Picard* to argue that the Trustee has no remedy to recover funds transferred on account of fraudulent obligations.  Answering Brief at 34.  This is incorrect.

*Picard* found that when a trustee seeks to recover subsequent transfers under § 550, only the initial transfer that depletes the estate must be avoided.  *Picard*, 917 F.3d at 98.  *Picard* further noted that "[r]ecovery is the business end of avoidance," and allows the trustee to "essentially trac[e] property into the hands of a recipient." *Id.*  Thus, under *Picard*, once the Trustee avoids the initial domestic transfer, any further enforcement to recover from a subsequent foreign transferee is permissible.

*Picard* only dealt with transfers, not fraudulently incurred obligations, but both are similarly subject to regulation under § 548.  Thus, if a trustee proves a

13

fraudulent obligation was incurred in the U.S., subsequent enforcement of remedies under the Bankruptcy Code to restore the depletion — either through a further avoidance of transfers on account of the fraudulent obligation under § 548 or recovery under § 550 — is within the focus of § 548 irrespective of the location of the transferees. When a trustee avoids a fraudulently incurred obligation, subsequent transfers on account of that obligation can also be avoided because "those obligations will be rendered invalid and unenforceable, and repayments made on those obligations may be similarly avoidable and/or recoverable . . ." See *In re Int'l Mfg. Grp, Inc.*, 2016 WL 7163588 (Bankr. E.D. Cal. Dec. 6, 2016).[2]

Moreover, the Bankruptcy Court's refusal to adopt *Picard* was solely based on its conclusion that the initial transfers and incurrence of obligations did not constitute domestic conduct. Because the Bankruptcy Court erred in these predicate determinations, the Bankruptcy Court's dismissing the Trustee's §§ 548 and 550 claims should be reversed for the reasons outlined in *Picard* and the Opening Brief.

### III.  The filing of a proof of claim renders disputes related to the debtor-creditor relationship *in rem* and therefore the presumption against extraterritoriality is inapplicable.

This Court should also, separately and independently, reverse the Bankruptcy Court because Appellees filed a proof of claim, thus making this dispute, which concerns the debtor-creditor relationship, *in rem* and a domestic application of the Bankruptcy Code's equitable power to restructure this relationship, including through the affirmative recovery of avoidable transfers. *See Langenkamp v. C.A. Culp*, 498 U.S. 42, 44 (1990) (citations omitted); *In re Simon*, 153 F.3d 991, 997 (9th Cir. 1998). By filing the proof of claim, Appellees requested the Bankruptcy Court adjudicate their relationship with the Debtors and their interests in the *res* of the bankruptcy estate, which the Bankruptcy Court is required to adjudicate under

---

[2]    Appellees only distinguish *IMG* because the transfers were not extraterritorial but not on the proposition for which it is cited. Answering Brief at 35.

14

§§ 502 and 704.  *See* Opening Brief at 33 ("an avoidance action on a proof of claim is a dispute that is fundamentally *in rem* in nature") (*citing* 11 U.S.C. §§ 502, 704). A creditor's "pro rata share of the res . . .  can neither be determined nor allowed until the creditor disgorges the alleged voidable preference he has already received." *Katchen v. Landy*, 382 U.S. 323, 336 (1966) (*citing Alexander v. Hillman*, 296 U.S. 222, 241-42 (1935)).

In the Opening Brief, the Trustee cites authority for three general principles: (i) the filing a proof of claim is an act that fundamentally transforms the debtor-creditor relationship by rendering it *in rem* in nature (*citing Katchen*, *Lagenkamp*, and *Stern*), (ii) an avoidance action on a proof of claim is equally *in rem* in nature (*citing Langekamp*, *Northern Pipeline*, *Pepper*, and *Bray*), and (iii) filing a proof of claim renders the presumption against extraterritoriality irrelevant since the *in rem* process is, by definition, a domestic process (*citing Simon*, *Diaz-Barba*, and *Interbulk*).  *See* Opening Brief at 32-34.

Appellees do not dispute these underlying principles about the nature of the claims adjudication process, but merely try to distinguish this case law seeking to draw immaterial factual distinctions: *Katchen* concerned bankruptcy court jurisdiction over avoidance actions; *Lagenkamp* concerned jury trial rights in avoidance actions; and *Stern* concerned Article III rights over state-law tort counterclaims.  Those factual distinctions do not alter the underlying and controlling principle regarding the Bankruptcy Court's *in rem* and equitable power to order the return of avoided transfers as part of the domestic claims adjustment process.

Further, Appellees contend that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code," *Norwest Bank Worthington v Ahlers*, 485 U.S. 197, 206 (1988), and a bankruptcy court's equitable powers are not "a roving commission to do equity."  *In re Saxman*, 325 F.3d 1168, 1175 (9th Cir. 2003).  *Norwest* and *Saxman*, however, stand only for the proposition that a bankruptcy court's equitable powers

15

cannot be used to achieve an outcome that is specifically prohibited under the plain text of the Bankruptcy Code. *See Norwest*, 485 U.S. at 197 (precluding bankruptcy court from utilizing equitable power to authorize a creditor to vote on a reorganization plan in contradiction to statutory authority); *Saxman*, 325 F.3d at 1175 (holding that the bankruptcy court could rely on its equitable powers under § 105(a) to partially discharge student loan debt).  Put otherwise, a bankruptcy court's equitable power may not be used to override "explicit mandates" of other sections of the Bankruptcy Code. *See Law v. Siegel*, 571 U.S. 415, 421 (2014).

A bankruptcy court's may traditional equitable power to require a claimant to return fraudulent transfers in connection with the claims process is not a "roving commission to do equity."  It is a well settled equitable power to restructure the debtor-creditor relationship and adjudicate the bankruptcy *res* under Supreme Court precedent.  The Ninth Circuit explained in *In re Bonham*, 229 F.3d 750 (9th Cir. 2000) that the Bankruptcy Code should be interpreted against the context of historical equitable practice and that, absent an express statutory prohibition, a Bankruptcy Court's traditional equitable powers are expressly preserved under § 105(a), despite the lack of codification.  *Id.* at 763-765 (holding that bankruptcy courts could exercise uncodified equitable authority to substantively consolidate debtor and non-debtor entities).

And the Appellees do not, and cannot, show that any "explicit mandate" that is violated by exercise of this traditional equitable power. Section 548 certainly does not *prohibit* the avoidance of otherwise extraterritorial transfers.  Nor does an extraterritorial prohibition exist under § 546, which contains the congressionally enacted limitations on avoidance powers.  *See* 11 U.S.C. § 546 (titled "Limitations on Avoidance Powers").  Thus, the silence in § 548 indicates that Congress did not seek to curtail the bankruptcy court's traditional equitable power to require a claimant to restore any previous depletion of the estate as part of the claims process. *See In re Clark*, 692 Fed. App'x 946, 947 (9th Cir. 2017) ("While the Code does not

explicitly authorize substantive consolidation, neither does the Code forbid it.").

Appellees also attempt to distinguish the Ninth Circuit's decision in *Simon* on two grounds.  First, they assert *Simon* concerned an action to enforce a bankruptcy discharge injunction against a foreign creditor for extraterritorial conduct.  But that is a distinction without a difference. *Both* the discharge injunction provision *and* the avoidance provisions lack express extraterritorial language within the statutory sections in which they are located.  Second, they assert *Simon* arose before the Supreme Court's *Morrison* decision rejecting the "effects test." That circumstance is ultimately irrelevant because of *Simon*'s express reliance on the *in rem* domestic nature of the dispute under *Katchen*.  *See Simon*, 153 F.3d at 997 (*citing Katchen*).

If anything, the facts here are even more compelling than those in *Simon*.  Here, the § 548 claims set forth in the FAC directly relate to the obligations on which Appellees seek distributions from the bankruptcy *res* that the Bankruptcy Court is administering through the claims process. By contrast, in *Simon*, the proposed application of the Bankruptcy Code to overseas conduct only involved a creditor's attempt to recover on discharged debts that did not directly involve the claims process.

Finally, Appellees attempt to distinguish *Interbulk* and *Diaz-Barba* on equally shallow grounds.  Appellees accurately state that those cases were framed as challenges to jurisdiction and the Supreme Court subsequently clarified that the presumption against extraterritoriality is not a jurisdictional question.  But the reasoning in those decisions, which concerned the nature of what is deemed to be an *in rem* matter, goes unchallenged.  *See* Opening Brief at 34 (quoting *Interbulk* and *Diaz-Barba*).

In the end, Appellees cannot escape the fundamental point of *Simon* — if a dispute is *in rem*, it must be domestic in nature and therefore the presumption against extraterritoriality does not apply.  *Simon* is controlling precedent, which the Bankruptcy Court misconstrued.  No court (other than the Bankruptcy Court) has

17

ever held that *Morrison* impliedly overruled *Simon* which, in fact, it did not. Accordingly, the bankruptcy court erred when it overruled controlling Ninth Circuit precedent based upon an inapposite, and easily reconcilable, Supreme Court authority. *Simon* still stands unless and until the Ninth Circuit decides otherwise.

## IV.    The FAC pleads a plausible recharacterization claim in Count VI.

The Bankruptcy Court dismissed Count VI solely on the basis that recharacterization of the underlying loan document — the Confirmatory Deed — was sought under § 105(a), which has no extraterritorial reference and there are no allegations of U.S. involvement in the transfer that was made following execution of the Deed of Undertaking.  (35-ER-10384—10385.)   Count VI was not just brought under § 105(a), it was brought under § 502 to disallow the claim (it does not seek to recover transfers).  A claim objection is squarely within a bankruptcy court's power to adjudicate claims.  *See In re Fitness Holdings Int'l, Inc.* 714 F.3d 1141, 1148 (9th Cir. 2013) (court has authority to recharacterize claims as part of claims process).

Appellees argue that the dismissal should be upheld because the Trustee did not plead recharacterization under governing Hong Kong law.  Contrary to this assertion, the FAC pleads in detail the relevant facts why the Deed of Undertaking should be recharacterized and established why Hong Kong law does not prevent recharacterization.  Answering Brief at 34.

The Bankruptcy Court erred in dismissing this count and should be reversed.

## V.    Appellees cite no relevant authority to support a basis for denial of leave to amend for counts of recharacterization.

Appellees sought to dismiss the fraudulent transfer counts in the original complaint (Counts I and II) on extraterritoriality grounds, which the Bankruptcy Court granted.  Appellees also sought to dismiss these counts on the basis that the financings in question were true leases and not disguised financings. (1-ER-313, 317.)  The Bankruptcy Court never ruled on this theory in its order of dismissal.

In response to the motion to dismiss, the Trustee requested that, in the alternative, he be granted "leave to replead." (2-ER-626.)  The Bankruptcy Court denied in part and granted in part Appellees' original motions to dismiss and granted the Trustee "leave to amend." (4-ER-2175.)  The leave to replead included all of the fraudulent transfer counts. (4-ER-2280.)

After the Bankruptcy Court entered this order, in a separate adversary proceeding the Bankruptcy Court held that a contract counterparty to a disguised financing must be joined in any action seeking to avoid a transfer of loan proceeds. Case No. 2:19-ap-01382-SK, Dkt. 109 at 37.  Accordingly, the Trustee added the recharacterization counts to the FAC, which were ancillary to the fraudulent transfer counts, to proactively address any pleading deficiencies in this adversary action that the Bankruptcy Court might identify in the next round of dispositive motions.

In both complaints, the Trustee alleged in detail why the 2015 Planes 6 and 7 Finance Leases and the 2016 Planes 6 and 7 Finance Leases were disguised financings. (1-ER-314–317, 328; 5-ER-2383–2387 ¶¶ 499-503, 509-525.)  These allegations were sufficient to allege a plausible claim that the Debtors had "an interest in property" in loan proceeds that were subsequently transferred to Appellees for purposes of § 548.

The only material differences between the two complaints with respect to these issues were (a) the FAC contained even more factual detail and attached more exhibits, (b) the FAC added other counterparties, and (c) the FAC added two separate recharacterization counts to formally recharacterize the disguised financings. (1-ER-314–317, 328; 5-ER-2383–2387 ¶¶ 499-503, 509-525.)

In other words, no new theories were actually added to the FAC — just the procedural separation of a previous theory and more detailed allegations — and thus there could be no prejudice to Appellees' in having the recharacterization counts separately pleaded.  But in ruling on Appellees' motion to dismiss the FAC, the Bankruptcy Court *sua sponte* dismissed the recharacterization counts as outside of

the scope of the leave to amend that was granted.

Appellees never sought to strike the claims or otherwise bring to the Trustee or Bankruptcy Court's attention that the recharacterization counts were outside of the scope of the Bankruptcy Court's leave to amend.  To that end, Appellees waived any such arguments below. *See In re Davies*, 2012 WL 370689, at \*12 (B.A.P. 9th Cir. 2012).  In any event, the only authority Appellees rely upon to sustain the Bankruptcy Court's *sua sponte* order relies upon a supposed violation of the local rules.  Answering Brief at 36.  But the Trustee did not violate any of the Bankruptcy Court's local rules.

As a result, the record shows that (i) the Trustee reasonably and proactively included the recharacterization counts in the FAC, (ii) that was fully within the scope of leave to amend since the recharacterization counts were inextricably tied to the fraudulent transfer counts, and (iii) there would be no prejudice if leave to amend had been granted.

Accordingly, as stated in the Opening Brief, the Bankruptcy Court abused its discretion in dismissing without leave to amend.

## CONCLUSION

For these reasons, the Trustee respectfully requests that the Court reverse the Bankruptcy Court's order dismissing the Amended Complaint.

DATED: April 13, 2022                    **DLA PIPER LLP (US)**

By*:  /s/ John K. Lyons*
DAVID M. RILEY (SBN 292087)
JOHN K. LYONS (*Pro Hac Vice*)
JEFFREY S. TOROSIAN (*Pro Hac Vice*)
JOSEPH A. ROSELIUS (*Pro Hac Vice*)

Attorneys for the Chapter 7 Trustee

EAST/189918411

1

## <u>RULE 8015(h) CERTIFICATE OF COMPLIANCE</u>

2

1.      This document complies with the type-volume limit of Fed. R. Bankr.

3    P. 8015(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed.

4    R. Bankr. P. 8015(g), this document contains 6497 words.

5

2.      This document complies with the typeface requirements of Fed. R.

6    Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6)

7    because this document has been prepared in a proportionally spaced typeface using

8    Microsoft Word for Office 365 in 14-point Times New Roman.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EAST/189918411